691 A.2d 208

Gerard P. MISERANDINO and Karen L. Miserandino,

v.

RESORT PROPERTIES, INC. et al.

No. 93, Sept. Term, 1995.

Court of Appeals of Maryland.

Feb. 12, 1997.

Reconsideration Denied April 8, 1997.

Benjamin Lipsitz, Baltimore, for petitioner.

Andrew R. Polott (Dwayne L. Garrett, Michael R. Cogan, Poppleton, Garrett & Polott, P.C., on brief), Bethesda, for respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

JOHN F. McAULIFFE, Judge, Specially Assigned.

This case involves a constitutional attack by judgment debtors against a judgment entered against them by a state trial court in Virginia. The collateral attack on the judgment was made in the Circuit Court for Carroll County, Maryland, where the judgment creditor sought to enforce the judgment. The defendants challenge the basis for the exercise of long-arm personal jurisdiction by the Virginia court, as well as the constitutional sufficiency of the Virginia statutory scheme for the giving of notice to nonresidents proceeded against under that Commonwealth's long-arm jurisdiction statute.

## I.  FACTS

Pursuant to the Uniform Enforcement of Foreign Judgments Act, Sections 11-801 to 807 of the Courts and Judicial Proceedings Article, Md. code (1957, 1989 Repl. Vol., 1992 Cum. Supp.), Resort Properties, Inc. (Resort), filed a judgment against Gerard and Karen Miserandino, (defendants) in the Circuit Court for Carroll County on June 3, 1993.  The notice of filing of judgment, mailed by a court clerk to the defendants, simply informed them that a judgment of $4,211.82 against them had been filed by Resort.  Thereafter, the defendants filed a motion to strike the entry of the foreign judgment.  From their inspection of the court's file, the defendants knew that the judgment was obtained in Warren County, Virginia and that Resort was the assignee of North Fork Shenandoah Vacations, Inc.

In the motion, the defendants alleged by affidavit made on personal knowledge that they were not served with process, had no notice, and did not appear in the Virginia action.  They alleged further, that:

> Defendants were not subject to the jurisdiction of said Virginia Court in said action, nor was either of them. . . . Said foreign judgment is invalid, null, void and of no effect since said Virginia Court lacked *in personam* jurisdiction over defendants, or either of them, in the action in which that judgment was entered.

Specifically, the motion alleged that neither of the defendants resides in Virginia, neither is domiciled in Virginia, neither is employed in Virginia, carries on any regular business, occupation, or vocation in Virginia, or maintains a principal place of business in Virginia.  Finally, they alleged:

> Defendants do not have sufficient contacts with Virginia to confer *in personam* jurisdiction over them, or either of them, upon the Virginia court in which said foreign judgment was entered.

In an accompanying memorandum, the defendants argued that they did not have sufficient contacts with Virginia to

"satisfy traditional notions of fair play and substantial justice," quoting *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877).

In opposition, Resort stated: "The underlying transaction was based upon the defendants having an interest in and possessing real property in Virginia, and the transaction in and of itself constituted transacting business by the defendants in Virginia." Resort also averred, "Defendants executed a loan application in July, 1988, in Virginia for an interest in real property which was located in Virginia, thereby confessing fees and jurisdiction over both defendants in the State of Virginia."

At the hearing of defendants' motion, Resort's attorney informed the court that he had a loan application, club membership contract, and deed in his file, and that he was willing to provide the court with copies. The court interrupted and there ensued an exchange between the judge and the defendants' attorney, Mr. Lipsitz, as follows:

THE COURT: Well ... I'm not sure Mr. Lipsitz has any problem with the fact that there was property purchased, or a loan made, or a contract made in West (sic) Virginia....

MR. LIPSITZ: Well, I'm not pressing that point today, your Honor....

I raise the issue because, frankly, until this morning, I had no idea what the claim was. You can't—from the record ... you really can't tell what the claim is.... If my people, in fact, own property in Virginia, and if this transaction involved that—is involved in this case, I probably would not prevail on the in personam jurisdiction point. Nevertheless, the service point is the critical point..... I'm willing to accept my brother's statement as to what he says is in his file ...

THE COURT: For purposes of the hearing (inaudible).

MR. LIPSITZ: ... that's something that could be thrashed out at a trial on the merits ... maybe they're subject to jurisdiction; maybe they're not.

The court initially granted the defendants' motion to strike. Resort filed a motion to alter or amend because the court had

cited the wrong statute in its order. After a second hearing, the court reversed its ruling and recorded the judgment against the defendants.

The Court of Special Appeals affirmed in an unreported opinion, and this Court granted certiorari.

## II. PERSONAL JURISDICTION

Virginia, like Maryland, has interpreted its long-arm statute as an attempt to assert jurisdiction to the extent possible under the Due Process Clause of the federal Constitution. *Brown v. American Broadcasting Co., Inc.*, 704 F.2d 1296 (4th Cir.1983). Section 8.01–328.1 of the Virginia Code (1950, 1992 Rep. Vol.) provides that:

> A court may exercise personal jurisdiction over a person ... as to a cause of action arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
>   *   *   *   *   *   *
>
> 6. Having any interest in, using, or possessing real property in the Commonwealth.

We note initially that the defendants had the burden of producing evidence to attack the judgment sought to be recorded.

> In Maryland, an authenticated copy of a record is prima facie evidence of jurisdiction and the judgment or decree must be presumed valid until it is declared invalid by a competent court.

*Imperial Hotel v. Bell Atlantic*, 91 Md.App. 266, 271–72, 603 A.2d 1371 (1992). In *Brewster v. Brewster*, 204 Md. 501, 105 A.2d 232 (1954), the Court considered the issue of a divorce obtained by the husband in Arkansas and another divorce obtained by the wife in Maryland. The wife argued the Arkansas divorce should not take effect until she was given an opportunity to prove it invalid. The court ruled, however, that "until [the foreign judgment] is declared to be invalid by a competent court, it must be presumed to be valid and given full faith and credit.... The burden of proof is upon the

attacker." *Id.* at 505, 105 A.2d 232. *See also Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 160, 215 A.2d 812 (1966). As noted, defendants offered no evidence to contradict the basis of long-arm jurisdiction asserted by Resort.

To exercise personal jurisdiction over a defendant who is not present in the forum state, "due process requires only that ... [the defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "[T]he quality and quantity of contacts required to support the exercise of personal jurisdiction" depend upon the facts of each particular case. *Camelback Ski Corp. v. Behning,* 312 Md. 330, 338, 539 A.2d 1107 (1988), *cert. denied,* 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988). Ordinarily, cases involve either "general jurisdiction" where the cause of action is unrelated to the defendant's contact with the forum state, or "specific jurisdiction" where the cause of action arises out of the defendant's contacts with the forum state. *Id.*

> Generally speaking, when the cause of action does not arise out of, or is not directly related to, the conduct of the defendant within the forum, contacts reflecting continuous or systematic... conduct will be required to sustain jurisdiction. On the other hand, when the cause of action arises out of the contacts that the defendant had with the forum, it may be entirely fair to permit the exercise of jurisdiction as to that claim.

*Id.* at 338–39, 539 A.2d 1107.

The defendants' allegations were insufficient to raise an actual controversy regarding the Virginia court's personal jurisdiction. If this were a "general jurisdiction" case, their assertion that they did not reside in Virginia or conduct business regularly in Virginia may have been sufficient to raise an actual controversy. *See International Shoe, supra,* 326 U.S. at 317, 66 S.Ct. at 158–59. This case, however, may be classified as a "specific jurisdiction" case because Resort's

cause of action arises out of the defendants' contacts with Virginia, signing a contract and allegedly purchasing an interest in property in that jurisdiction. Thus, under the facts of this case, the defendants' allegations did not raise an actual controversy regarding the existence of a sufficient basis for the exercise of personal jurisdiction.

■ In a suit arising out of a contract signed in the forum state, the contract plus other factors provide a sufficient basis for the exercise of personal jurisdiction in the forum state. In *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court ruled that a Texas insurance company was amenable to suit in California because the insured was domiciled in California and the suit arose under the insurance contract. "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *Id.* at 223, 78 S.Ct. at 201. Other factors, however, such as ongoing relationship with the party in the forum state, are required to establish "minimum contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985). In this case, the defendants never alleged or proved that they did not sign a contract in Virginia, that this case did not arise out of a contract signed in Virginia, or that there were no other factors to support personal jurisdiction.

■ In any event, it is clear from the colloquy we set forth in Section 1, *supra,* that for present purposes the defendants waived any attack they may have had against the assertion of personal jurisdiction under the Virginia long-arm statute, and acquiesced in the statement of counsel for the plaintiff that the documentary evidence he proffered would be sufficient to show a proper ground for the exercise of that jurisdiction. Any issues that might have been raised as to the sufficiency of the plaintiffs' original pleadings in Virginia, or as to the grounds for personal jurisdiction, were effectively waived for purposes of the circuit court hearing.

### III. ADEQUACY OF NOTICE

██ The more difficult question with respect to the acquisition of personal jurisdiction by the Virginia court involves the constitutional adequacy of the means employed to give notice to the defendants. The procedure followed by the plaintiff was in accordance with the Virginia statute prescribing the method of service of process upon a nonresident individual in a case involving long-arm jurisdiction, but that will not be sufficient to confer jurisdiction unless the method authorized by the statute comports with the requirements of federal due process. Thus, we are required to address a question not yet resolved by the United States Supreme Court, and only rarely considered by other federal and state courts: whether initial and original service of process by first-class mail is constitutionally sufficient to confer *in personam* jurisdiction over a nonresident individual in a long-arm jurisdiction case.

██ The Due Process Clause of the 14th Amendment "at a minimum ... require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). The importance of giving adequate notice cannot be overstated.

No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done.

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 171–72, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951), Frankfurter, J. concurring (footnote omitted).

██ No particular procedure is required in all cases. "On the contrary, due process is flexible and calls only for such procedural protections as the particular situation demands. Procedures adequate under one set of facts may not be sufficient in a different situation." *Department of Transportation v. Armacost*, 299 Md. 392, 416, 474 A.2d 191 (1984).

*See also, Golden Sands Club v. Waller,* 313 Md. 484, 493, 545 A.2d 1332 (1988) (Maryland Contract Lien Act, requiring notice of lien to condominium unit owners by certified or registered mail, return receipt requested, satisfies due process).

To determine whether notice in a particular case is constitutionally sufficient, the court "must balance the interests of the state or the giver of notice against the individual interest sought to be protected by the fourteenth amendment." *Golden Sands, supra,* 313 Md. at 496, 545 A.2d 1332; *see also, Mullane,* 339 U.S. at 314, 70 S.Ct. at 657; *Armacost,* 299 Md. at 416, 474 A.2d 191. At a minimum, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657.

Among the multiple factors to be considered in determining what process is due in a given situation is the nature of the action being brought.

What is a sufficient method of notification depends upon the nature of the action and the circumstances. The interests to be considered are, on the one hand, those of the state and of the plaintiff in bringing the issues involved to a final settlement and, on the other hand, those of the defendant in being afforded an opportunity to defend. The practicalities of the situation must be considered. A state is not precluded from exercising such judicial jurisdiction as it may possess by the fact that under the circumstances it is impossible to make certain that notice will reach the defendant or because the only sure way of giving notice to the defendant would be so burdensome and expensive as to be impracticable. On the other hand, when actual notice is practicable, a procedure which is a mere gesture is not enough. A method of notification which would be sufficient in some circumstances may be insufficient in others because another method would obviously be better calculated to give the defendant knowledge of the action.

Restatement (Second) of Conflict of Laws § 25 cmt. d. (1971). Although the distinction between *in rem* and *in personam* actions no longer offers a *per se* solution to problems of notice, the nature of the action continues to be relevant.

> [W]e decline to resolve the constitutional question based upon the determination of whether the particular action is more properly characterized as one *in rem* or *in personam.*
> ... That is not to say that the nature of the action has no bearing on a constitutional assessment of the reasonableness of the procedures employed. The character of the action reflects the extent to which the court purports to extend its power, and thus may roughly describe the scope of potential adverse consequences to the person claiming a right to more effective notice.

*Greene v. Lindsey,* 456 U.S. 444, 450, 102 S.Ct. 1874, 1878, 72 L.Ed.2d 249 (1982). The Supreme Court has recognized that when an action involves property, the state may indulge certain assumptions.

> The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of law may reasonably be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing ... or that he has left some caretaker under a duty to let him know that it is being jeopardized.... As phrased long ago by Chief Justice Marshall in *The Mary,* 9 Cranch 126, 144, 3 L.Ed. 678 'it is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it.'

*Mullane, supra,* 339 U.S. at 316, 70 S.Ct. at 658. More recently, the Court said:

It is, of course, reasonable to assume that a property owner will maintain superintendence of his property, and to presume that actions physically disturbing his holdings will come to his attention.

*Greene v. Lindsey,* 456 U.S. at 451, 102 S.Ct. at 1879. For a further discussion of the "caretaker assumption" *see* R. Greenbaum, *The Postman Never Rings Twice: The Constitutionality Of Process By Posting After Greene V. Lindsey,* 33 Am. Univ.L.R. 601, 616–20 (1984).

When the nature of a case involved judicial settlements by the trustee of a common trust fund embracing 113 trusts with resident and nonresident beneficiaries, the Supreme Court held that personal service of notice of the accounting would not be required.

This type of trust presupposes a large number of small interests. The individual interest does not stand alone but is identical with that of a class. The rights of each in the integrity of the fund and the fidelity of the trustee are shared by many other beneficiaries. Therefore notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interest of all, since any objection sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable.

*Mullane, supra,* 339 U.S. at 319, 70 S.Ct. at 659–60. The Court held, however, that newspaper publication alone was insufficient "not because in fact it fails to reach everyone, but because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.*

The case before us is not *in rem* or *quasi in rem.* This case involves an attempt by one party to obtain a money judgment against another party or parties for an alleged breach of a promise to pay. It is a classic example of a case requiring the acquisition of *in personam* jurisdiction. Historically, in-hand delivery of process has been the preferred method of service

in a case of this kind, but equivalent methods have been approved and alternative methods may be utilized when personal service proves difficult or impossible.

In Maryland, the method of service of process ordinarily required to obtain original personal jurisdiction over a resident or nonresident individual is by personal delivery, or by certified mail with restricted delivery and return receipt stating to whom delivered and the date and address of delivery. Maryland Rule 2–121(a). Additionally, personal service outside the state may be made "in the manner prescribed by the court or prescribed by the foreign jurisdiction if reasonably calculated to give actual notice." *Id.* Substituted service is permitted when a defendant has acted to evade service;[1] when a person resists service by threats, or force;[2] or when good faith efforts to serve the defendant in person or by certified mail have not succeeded.[3]

In the case before us, there is no indication that any earlier attempt of service had been made, or that the defendants were attempting to avoid or resist service. Accordingly, the method of service utilized in this case, service by first-class mail, would not have been sufficient under Maryland law. That fact is of no consequence, however, if the method of service satisfies the requirements of due process, because the service of process was in accordance with the applicable Virginia statute.

Section 8.01–329 of the Code of Virginia (1950, 1992 Repl. Vol.) provides an alternative method of service of process on a nonresident subject to long-arm jurisdiction by service "on the Secretary of the Commonwealth of Virginia ... who, for this purpose, shall be deemed to be the statutory agent of such person." That section of the code further provides that service on the Secretary

---

1. Maryland Rule 2–121(b).

2. Section 6–303 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1995 Rep. Vol.).

3. Maryland Rule 2–121(c).

.

shall be sufficient upon the person to be served, provided that notice of such service, a copy of the process or notice, and a copy of the affidavit are forthwith mailed, by the Secretary to the person or persons to be served at the last known post-office address of such person, and a certificate of compliance herewith by the Secretary or someone designated by him for that purpose and having knowledge of such compliance, shall be forthwith filed with the papers in the action.

The concept of serving a state officer or agency in connection with the acquisition of personal jurisdiction over a nonresident dates to the era of *Pennoyer v. Neff, supra,* when it was held that *in personam* jurisdiction could be acquired only by service made within the state. With the subsequent recognition of long-arm jurisdiction the necessity for service within the state disappeared, and resort to the legal fiction of "consent" to service on a local agent or "appointment" of a local agent for service was no longer necessary. See *Olberding v. Illinois Central R. Co.,* 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); *Com. De Astral v. Boston Met. Co.,* 205 Md. 237, 264, 107 A.2d. 357, 108 A.2d. 372 (1954).

Inasmuch as service no longer is limited in all cases to the territorial confines of the jurisdiction in which the court is sitting, the requirement in the original nonresident motorist statutes that service be made "within the state" by serving a state official before process is mailed to defendant no longer is of constitutional magnitude. Although it served its purpose well in an earlier era, it is largely an anachronism today.

4 Wright & Miller, *Federal Practice and Procedure,* § 1074 at p. 459 (1987).

██ Although no longer required as a condition to the acquisition of personal jurisdiction over a nonresident, and insufficient in itself to confer jurisdiction, involvement of the Secretary of the Commonwealth does serve the important purposes of ensuring that notice is in fact sent and providing a neutral and official repository for documentary evidence of

that fact.[4]   The defendants do not contend that the required procedure was not followed in this case.   That the notice was sent, however, does not answer the question of whether the means employed for transmittal of the notice was constitutionally sufficient.   Service on a state official or agency does not obviate the necessity for constitutionally sufficient notice to the defendant.   *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928);   *Grote v. Rogers*, 158 Md. 685, 149 A. 547 (1930).

Personal delivery of process to a defendant, followed by the filing of written proof of that service, is a time-honored method of acquiring personal jurisdiction.   This method of service, properly executed, provides a high degree of probability that the defendant received the required notice.   An alternative method of "personal delivery" is to have an employee of the United States Postal Service deliver the process to the defendant.   This method, service by mail, is often quicker and less expensive than service by a sheriff or private process server, but may present a problem with respect to proof of service.

Postal regulations providing an optional service of restricted delivery of registered or certified mail do, however, offer a solution to the problem of proof of service.   For an additional fee, a person mailing a letter may direct that the letter be handled as registered or certified mail, that the letter may be delivered only to the addressee or his duly authorized representative, and that the person accomplishing delivery return a receipt to the sender bearing the signature of the person receiving the letter and showing the date and address of delivery.   *See* 39 C.F.R. § 111.1 incorporating by reference the provisions of the Domestic Mail Manual.   *See* in addition, the following sections of the Domestic Mail Manual:  S 911 registered mail;  S 912 certified mail;  S 915 return receipts; and S 916 restricted delivery.   When process is mailed in this

---

**4.**  The Secretary is required by statute to maintain a detailed "record of each notice of service sent to a person for a period of two years." Section 8.01–329(E), Code of Virginia (1950, 1992 Repl.Vol.).

fashion a return that includes a postal receipt bearing the signature of the defendant or his authorized agent and a copy of the process that was mailed is filed, and the court can proceed with a high level of confidence that the requisite notice has been given.

> Service by registered or certified mail should be regarded as efficacious [as personal service] from a constitutional perspective to evoke personal jurisdiction since the return receipt normally guarantees that defendant or someone related or associated with him has received the process.

4 Wright and Miller, *Federal Practice and Procedure* (1987), § 1074 at p. 457–58.

Problems have arisen with the use of restricted delivery mail for service of process principally with respect to mail that is returned "refused" or "unclaimed." Postal regulations permit an addressee to "refuse to accept a piece of mail when it is offered for delivery." Domestic Mail Manual, D 042. In the event of an affirmative refusal, the letter is marked "refused" and is returned to the sender. A restricted delivery letter that is not affirmatively refused, but is not delivered because the addressee does not claim it after delivery is attempted and notices have been left at the address given, is returned to the sender marked "unclaimed."

Courts in jurisdictions permitting personal service by registered or certified mail have generally held that a defendant cannot defeat service by an affirmative refusal to accept the letter, but that an "unclaimed" letter will not suffice to confer personal jurisdiction. *See,* Note, *Service Of Process By Mail,* 74 Mich. L.Rev. 381, 387–91 (1975); Note, *Constitutional Law; The Validity Of Service Of Process By Mail When There Is No Return Receipt; The Outer Limits Of Due Process,* 25 Okla. L.Rev. 566, 567–70 (1972). *See also, Lohman v. Lohman,* 331 Md. 113, 626 A.2d 384 (1993) (unclaimed certified letter insufficient to sustain personal jurisdiction over individual defendant).

In this state we have upheld substituted service on a corporation when service was made in accordance with the

statute by serving the State Department of Assessments and Taxation after multiple attempts to serve the resident agent were unsuccessful and registered mail notice sent by the Department to the corporation was "unclaimed." *Barrie– Peter Pan Sch. v. Cudmore,* 261 Md. 408, 276 A.2d 74 (1971). We note, however, that consistent with the flexible nature of due process, the process that must be afforded a corporation may differ from that required in the case of an individual.

> [I]n the case of foreign corporations a less rigorous standard may suffice than in the case of individuals, for the reason that a state is generally without power to exclude an individual non-resident from doing business or making contracts within the state, but may generally completely exclude foreign corporations or may admit them only subject to conditions.

*Com. De Astral v. Boston Met. Co., supra,* 205 Md. at 262, 107 A.2d 357.

Recognition of registered or certified mail as an effective method of accomplishing personal service of process is not unusual. In 1982, the Supreme Court forwarded to Congress a proposed revision of Federal Rule of Civil Procedure 4 that would have utilized restricted delivery registered or certified mail as an alternative to personal service. Significant protests were advanced, however, resulting in a postponement of the effective date of this proposed rule change, and ultimately resulting in a major change in the proposed amendment to the Rule. *See Brown v. Hart,* 96 F.R.D. 64, 116–135 (N.D.Ill. 1982), detailing the history of the initial proposal and subsequent modification.

In a letter dated December 10, 1982, to the Chairman of the House Judiciary Committee, Assistant Attorney General Robert McConnell summarized the criticisms of the proposed rule, as follows:

> [C]ritics of that system of mail service have argued that certified mail is not an effective method of providing actual notice to defendants of claims against them because signatures may be illegible or may not match the name of the defendant, or because it may be difficult to determine

whether mail has been 'unclaimed' or 'refused,' the latter providing the sole basis for a default judgment.

96 F.R.D. at 116.

The amendment to Fed.R.Civ.P. 4 that emerged from Congress in 1983 did not permit original service by registered or certified mail as a means of acquiring personal jurisdiction. Instead, the Rule permitted an attempt at service by first-class mail that would be effective *only* if the person to be served returned a written acknowledgment within twenty days after the date of mailing. If an acknowledgment of service was not received, service would then be required under other provisions of the Rule. As an incentive to the recipient to accept service by first-class mail, the Rule further provided that a recipient who declined to file a written acknowledgment would be charged with the costs of service by other means. Changes to Rule 4 effective in 1993 now make it clear that this use of first-class mail does not actually achieve service of process, but rather facilitates the filing by the recipient of a waiver of service that permits the action to go forward.

This history of recent amendments to Fed.R.Civ.P. 4 suggests the existence of an abiding congressional concern about the effectiveness about certain types of mail delivery as a primary means of service to acquire personal jurisdiction. Certainly there has been no suggestion that the use of first-class mail alone to accomplish such service would be looked upon with favor.

The Maryland legislature has recently enacted a bill that permits the giving of first notices in an estate case by first-class mail instead of restricted mail.[5] Chapter 417 of the Laws of Maryland, 1996, codified at § 1–103 of the Estates and Trusts Article, Maryland Code (1974, 1991 Rep. Vol., 1996

---

**5.** This statute does provide, however, that the use of first-class mail for this purpose will be permitted only if this Court, through its rule-making power, does not require personal service or some other method of notice. Article 1–103(a)(1) of the Estates and Trusts Article, Maryland Code (1974, 1991 Rep. Vol.1996 cum. supp.). This statute also permits the Orphans Court the option of requiring restricted mail delivery of first notices in any case. Section 1–103(a)(2).

cum. supp.). The legislative history indicates that the principal purpose of the change was to reduce costs now borne by Registers of Wills. There is no discussion in the legislative history or in the brief approval of the proposed bill by the Attorney General of any due process considerations. This Court has not had an opportunity to pass upon the constitutional sufficiency of notice by first-class mail in this context, and we intimate no opinion on that question.

Professor Robert W. Kirst, in his article *Nebraska's Modern Service of Process Statute,* 63 Neb. L.Rev. 1 (1983) suggests that service by first-class mail as a primary means of acquiring personal jurisdiction probably does not comport with the requirements of due process.

> Service by first class mail alone, with no receipt, is an alternative method of substituted service, but it hardly seems likely to comply with the due process clause, notwithstanding the Sixth Circuit's possible endorsement of it in *Greene* [*v. Lindsey* ]. The Sixth Circuit clearly had no empirical data to show that the rate of pilferage from mailboxes in public housing projects was less than the rate of removal of summons from doors. The chance that the summons will be mailed or delivered to the wrong address must be at least as high, if not higher, as the chance it will be posted on the wrong door. With ordinary mail there is no sheriff's return of service to provide some assurance that the summons was actually posted and when it was posted; in entering a default, the court can relay only on post office routine to deliver mail promptly and return undeliverable mail. Although the Supreme Court upheld the use of first class mail service in *Mullane v. Central Hanover Bank & Trust Co.,* it was in the context of an action more like class litigation than individual litigation. Given these defects in service by ordinary mail, the wise course is to consider the caveat in *Greene* as a warning not to use ordinary mail as a routine method of substituted service.

*Id.* at 6 (footnotes omitted).

The parties did not supply, and we are unable to find, empirical data reflecting the rate of success of the United

States Postal Service in delivering first-class mail. The Postal Service does provide performance data relating to average days to deliver from overnight service areas, from two-day service areas, and from three-day service areas. This data is compiled by Price Waterhouse under contract to the Postal Service, and provides figures for 96 cities and the nation. Data for September 14, 1996, to December 6, 1996, disclose that the aggregate on-time delivery ranges from 76 percent to 91 percent.[6] These figures do not, however, disclose how many pieces of first-class mail were not delivered.

Notwithstanding the concerns about the use of mail without a signed returned receipt or waiver of service to obtain personal jurisdiction, there is strong precedent and rather extensive experience that supports the use of first-class mail for that purpose. That precedent may be found in Federal Bankruptcy Rule 7004, and in the 1976 amended version of its predecessor Rule 704. Prior to the 1976 amendment, Rule 704(c) permitted service of summons, complaint, and notice of trial upon competent individuals "by any form of mail requiring a signed receipt." The 1976 amendment permitted such service anywhere within the United States "by first-class mail postage prepaid." Successor Rule 7004(b), adopted in 1983, continues the practice of permitted service of the summons and complaint by first-class mail, and provides that the mailing may be made "to the individual's dwelling house or usual place of abode," or "to the place where the individual regularly conducts a business or profession." Unlike the procedure specified in Fed.R.Civ.P. 4, no acknowledgment of waiver of service is required to accomplish service under this Rule. Moreover, this method of service may be made in "non-core" as well as "core" proceedings, so that it is recognized as an effective means of acquiring original personal jurisdiction over

---

6. The break down of the aggregate figures is as follows:
   Percent on time, overnight to nation—90.77 percent
   Percent on time, two-day to nation—75.90 percent
   Percent on time, three-day to nation—79.01 percent

a stranger to the bankruptcy proceedings in a contested matter.

The constitutional sufficiency of notice given pursuant to Bankruptcy Rule 7004 and its predecessor rule has been upheld. *Matter of Park Nursing Center, Inc.*, 766 F.2d 261 (6th Cir.1985); *In Re M & L Business Mach. Co., Inc.* 190 B.R. 111 (D.Colo.1995); *In Re Kim*, 163 B.R. 157 (9th Cir. BAP1994); *In Re Cossio*, 163 B.R. 150 (9th Cir.BAP1994), *aff'd*, 56 F.3d 70 (9th Cir.1995); *Leavell v. Karnes*, 143 B.R. 212 (S.D.Ill.1990); *Windsor Communications Group, Inc. v. Grant*, 75 B.R. 713 (E.D.Pa.1985). It should be noted, however, that two of the three judges in *Matter of Park Nursing Center, Inc. supra*, believed that first-class mail service satisfied due process requirements only if interpreted in the light of Federal Rules of Civil Procedure 55(c) and 60(b) so that

> [I]f a default judgment in bankruptcy proceedings is entered against an individual who, through no fault of his own, failed to receive actual notice by first-class mail, then that judgment should be set aside under these rules upon a showing of meritorious defense.

766 F.2d at 263.

These rule changes have been upheld on the basis that special requirements of bankruptcy cases justify a more expeditious and less costly means of service than might be required in an ordinary civil case.

> In recognition of the time constraints in bankruptcy proceedings and to insure simple and expeditious service of defendants to such proceedings, Congress enacted Bankruptcy Rule 7004(b) to allow for service by mail alone.

*In Re M & L Business Mach. Co., Inc., supra*, at 115.

What is needed in bankruptcy proceedings is a form of notice which is likely to achieve actual notice in a large volume of cases but is not overly expensive or time consuming. Bankruptcy proceedings occupy a large and important place in our federal judicial system. In 1983, there were 490,717 petitions filed in bankruptcy court, and of the

842,229 bankruptcy proceedings pending, 123,442 were adversary proceedings.

*Matter of Park Nursing Center, Inc., supra,* 766 F.2d at 263. Additionally, adjudication of the rights of many persons and entities may be delayed in bankruptcy proceedings pending the determination of adversary proceedings.

As we pointed out earlier, the concept of due process is not static—the process that is due may change according to the circumstances. Necessity may, therefore, be a valid factor in the due process equation in the balancing of the interest of the state against the interest of the individual. Historically, courts have permitted the employment of potentially less effective methods of service where more effective methods have been attempted and have failed, or are otherwise impractical. Notification of lien holders in tax sale proceedings by mail instead of individual personal service may be adequate because of the state's interest in facilitating tax sales, the presumption of reasonable interest in tax sale proceedings by the lien holders, and the difficulty and expenses of personal service, but notice by publication may not be sufficient when the identities of creditors are reasonably ascertainable. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Reasonable risks that the method of notice employed will not reach each individual affected may be tolerated when the action is against a class of persons and notice is reasonably certain to reach most of those interested in objecting. *Mullane, supra,* 339 U.S. at 306, 70 S.Ct. at 652.

Turning to the case before us, we consider whether there are any special or unique circumstances that would justify relaxation of the ordinary and available methods of service that offer a considerably higher degree of probability of actual notice. In other words, given the availability of personal service by officials or private process servers, or service by restricted delivery mail, what state interest is present in this case that would justify resort to the significantly less certain procedure of first-class mail? We find but one circumstance that may distinguish this case from any other *in personam*

action: the fact that the defendants are nonresidents of the Commonwealth of Virginia.

The Supreme Court has recognized that some distinction may be drawn between the methods employed to serve residents and some to serve nonresidents.

> Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents. We disturb none of the established rules on these subjects.

*Mullane, supra,* 339 U.S. at 314, 70 S.Ct. at 657. Additionally, the fact of nonresidency has been held sufficient in some instances to uphold disparate treatment when a challenge has been made under the Equal Protection Clause. *See, e.g., Owens v. I.F.P. Corp.,* 374 F.Supp. 1032 (W.D.Ky.1974); *Castelline v. Goldfine Truck Rental Service,* 49 Del. 155, 112 A.2d 840, 844 (1955).

We do not, however, view the factor of nonresidency as being of such significance or compelling interest as to justify the shifting of the balance to a point where notice by first-class mail alone will be sufficient to confer personal jurisdiction over an individual defendant. We fail to see why traditional methods of personal service on residents become so much more difficult or costly when applied to nonresidents. Certainly there may be some additional inconvenience or expense when dealing with officials or private process servers in another state, but this small difference hardly justifies the significant step of permitting first-class mail service. Moreover, service by mail requiring a signed return receipt would be no more difficult or expensive in the case of a nonresident than that of a resident. Virginia does not permit first-class mail service of its residents in personal jurisdiction cases except where more conventional means have failed, and then only in conjunction with posting of the premises.[7] Code of Virginia (1950, 1992 Repl.Vol., 1996 Cum.Supp.) § 8.01–296.

---

7. Interestingly, Virginia's statutes dealing with long-arm jurisdiction over nonresident motorists and owners or operators of aircraft continue

Virginia does permit a direct attack against a void judgment, if made within two years, § 8.01–428(A)(ii), and a collateral attack by an independent equity action if a party can show nonreceipt of the first-class mail notice and the existence of a defense to the action, § 8.01–428(D). As the Supreme Court has said, however, in *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), actions for relief from a default judgment that place a burden of proof upon the petitioner that he would not have borne if the notice had been sufficient in the first instance are insufficient to overcome the initial deficiency.

The heart of the question is whether the means adopted by the Virginia legislature to notify nonresident defendants of an *in personam* action against them amounted to "a reliable means of acquainting interested parties of the fact that their rights are before the courts" and "means ... such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane, supra,* 339 U.S. at 315, 70 S.Ct. at 657, when "the reasonableness of the notice provided ... [is] tested with reference provided to the 'feasible and customary' alternatives and supplements to the form of notice chosen," *Greene v. Lindsey, supra,* 456 U.S. at 454, 102 S.Ct. at 1880, quoting in part from *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657–58. We hold that the means selected by the Virginia legislature to accomplish notice of service of original process in this case does not measure up to this test, and are constitutionally inadequate to afford the due process required by the United States Constitution. The method chosen to acquire personal jurisdiction over nonresident individuals—notice by first-class mail—"is not reasonably calculated to reach those who could easily be informed by other means at hand." *Mullane, supra,* 339 U.S. at 319, 70 S.Ct. at 660.

---

to require the state agent receiving process to "forthwith send by registered or certified mail, with return receipt requested, a copy of the process to the person named therein...." Code of Virginia (1950, 1992 Repl.Vol.) § 8.01–312.

■ Accordingly, although the judgment may remain valid where entered until there is a contrary ruling by a court of competent jurisdiction, we decline to grant full faith and credit to the judgment because of our finding that the Virginia trial court did not acquire personal jurisdiction over these defendants because of the constitutional inadequacy of notice.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

Dissenting Opinion by CHASANOW, J., in which RODOWSKY and RAKER, JJ., join.

CHASANOW, Judge, dissenting.

A majority of this Court decides today that the notice provisions of Virginia's long-arm statute are unconstitutional. I respectfully dissent. If statutorily authorized service of process in a long-arm jurisdiction case is actually received by the defendant, whether effectuated by first-class mail or certified mail with restricted delivery and return receipt requested, the court ought to have *in personam* jurisdiction. The focus of this Court should be on whether the Miserandinos actually received the statutorily authorized mail service. If they did, they received all of the process they were due.

If the Miserandinos were served with process in the Virginia proceeding, then the judgment against them should be given full faith and credit. The Miserandinos maintain that they did not receive service, but their uncorroborated denial of service is not necessarily adequate to overcome the presumption that service was properly made. Therefore, this case should be remanded in order to afford the Miserandinos an opportunity to establish that they were not served.

## I.

This case does not arise from a failure to follow the applicable statute governing service of process. It is undisputed that Resort strictly complied with the notice requirements of Virginia's long-arm statute. Specifically, Resort served the Secretary of the Commonwealth with process, accompanied by an affidavit setting forth the Miserandinos' address as "418 Ridge Rd., Westminster, Md. 21157," and stating that the Miserandinos were non-residents of the Commonwealth. The Secretary in turn certified that copies of these papers "were forwarded by first-class mail" to the Miserandinos.

The trial judge concluded that the Miserandinos received due process of law, and denied the Miserandinos' Motion to Strike Entry of the Judgment. Although it is not clear from the record, this ruling may have included a determination that the Miserandinos received the notice mailed to each of them by the Virginia Secretary of the Commonwealth. Certainly, the Miserandinos' mere affidavit of nonreceipt of service did not conclusively rebut the strong presumption of service. Until there is a hearing to rebut the presumption of service, we must assume that the Miserandinos received the mailed notice. If the Miserandinos received mailed notice of the Virginia suit pursuant to the Virginia statute, this Court should not give them standing to challenge the constitutionality of the notice provision in the Virginia statute.

Recently in *Academy of IRM v. LVI Environmental Services, Inc.*, 344 Md. 434, 446, 687 A.2d 669, 675 (1997), this Court held that "the return of service . . ., with its accompanying return receipt, *prima facie* evidences service of process. . . ." "In a particular case, [however,] it may become a question of fact whether the person who signed the return receipt was an agent for accepting the delivery of certified mail on behalf of the corporate officer to whom delivery was restricted." 344 Md. at 447, 687 A.2d at 675. Because no evidence was produced in *Academy of IRM* to contradict the *prima facie* validity of service, we upheld the service of process. 344 Md. at 449–50, 687 A.2d at 676–77.

How much of a burden of proof will be placed on a defendant to prove nonreceipt of service will depend on the reliability of the method of service chosen. Where there is a sheriff's return of service, very strong evidence is necessary to impeach the return. In *Weinreich, Adm'x v. Walker,* 236 Md. 290, 203 A.2d 854 (1964), we said:

"It is true that there may be successful impeachment of service seemingly valid on the record but, in all the Maryland cases in which there has been, the circumstances have ranged from virtual demonstration of the lack of service (as in *German v. Slade,* 42 Md. 510, in which a defendant swore he had not been served and the deputy sheriff swore he had served the other defendants but not that one and had entered the notation of service by mistake) to clear and convincing evidence that there had not been service, in the form of corroboration of the defendant's claim that there had not been, by independent disinterested witnesses, plus lack of refutation, when challenged, by the sheriff or others. See, for example, *Master v. Master,* 223 Md. 618[, 166 A.2d 251](the defendant wife swore she was working in Washington when she was said to have been summoned and was corroborated by her employer's payroll records and check); *Little v. Miller [*220 Md. 309, 153 A.2d 271 (1959)*], supra* (the defendant, a seaman, swore he was on a voyage when he was said to have been served and official Coast Guard records supported him); *Harvey v. Slacum [*181 Md. 206, 29 A.2d 276 (1942)*], supra* (husband and wife swore they had never been summoned and the deputy sheriff did not know whether he had served the father or his son, could not recognize the husband in the courtroom and could not remember the wife or say that he had summoned her); *Plummer v. Rosenthal,* 178 Md. 149[, 12 A.2d 530](sworn denial by Earl Rosenthal of any service; sheriff identified the brother of the defendant, Irvin, as the man he had summoned); *Piedmont–Mt. Airy Guano Co. v. Merritt,* 154 Md. 226[, 140 A. 62](father said to have been served at home of his son; sworn denial of service plus corroboration that the father never at any time was at son's home at the hour

mentioned by the sheriff; summons for both father and son were found by son's wife on his bureau and sheriff was highly uncertain in attempted identification); *Pattison v. Hughes,* 80 Md. 559[, 31 A. 320](four witnesses swore sheriff was completely drunk when he called and said only 'I want you to come Ellicott City'; sheriff did not deny it)."
*Weinreich,* 236 Md. at 297, 203 A.2d at 857.

Compliance with the statutory requirements for service in the instant case gives rise to a presumption that service was properly made. *Academy of IRM,* 344 Md. at 446–47, 687 A.2d at 675. Hence, the burden is on the Miserandinos to show by clear and satisfactory evidence that they did not receive the mailed summons. The presumption of service afforded by first-class mail service ought to be the easiest presumption of service to rebut, but a mere affidavit of nonreceipt without corroborating facts does not necessarily rebut the presumption of receipt of mailed service. The trial judge did not find that the Miserandinos failed to receive the mailed service; in fact, the trial judge's finding that the Miserandinos were not denied due process may have encompassed a finding that they did receive the mailed service.

At a hearing to determine whether the Miserandinos received the mailed notice, the factors that the trial judge could weigh against the Miserandinos' denial of service are the presumption of proper mailing based on the affidavit of the Secretary of the Commonwealth of Virginia; the fact that the address was the correct home address and that other mailed service in the Maryland case was received at that address; and any possible defenses the Miserandinos have to the Virginia action. The Miserandinos' possible defenses to the Virginia action are relevant to receipt of service based on the assumption that a person with a strong defense would be unlikely to ignore notice of a suit, but a person with no defense might be likely to ignore or forget about notice of a suit. Instead of refusing to give full faith and credit to the Virginia judgment, this Court should remand the case to give the Miserandinos an opportunity to rebut the presumption of service and to establish a denial of due process by proving an

actual lack of notice and to proffer some defense to the Virginia action.

## II.

The majority clearly defines what it sees as the issue in this case: "whether initial and original service of process by first-class mail is constitutionally sufficient to confer *in personam* jurisdiction over a nonresident individual in a long arm jurisdiction case." 345 Md. 43, 52, 691 A.2d 208, 212 (1997). It then recognizes the significant body of law and experience that is contrary to its holding when it says, "there is strong precedent and rather extensive experience that supports the use of first-class mail. . . ." 345 Md. at 63, 691 A.2d at 217–218. The Court goes on to acknowledge that service by first-class mail is probably adequate to acquire jurisdiction in bankruptcy cases. But, according to the majority, first-class mail is not adequate to acquire jurisdiction over nonresidents in long-arm cases because it " 'is not reasonably calculated to reach those who could easily be informed by other means at hand.' " 345 Md. at 67, 691 A.2d at 220 (quoting *Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 319, 70 S.Ct. 652, 660, 94 L.Ed. 865, 876 (1950)). The majority seems to indicate that the only acceptable form of mail service is "certified mail with restricted delivery and return receipt stating to whom delivered and the date and address of delivery." 345 Md. at 67, 691 A.2d at 214 (citing Maryland Rule 2–121(a)). Hereinafter, I will refer to that kind of mail as "certified" mail, but the majority's requirement raises interesting questions, such as, would certified mail without restricted delivery, but which is signed for by the defendant, also be inadequate to acquire *in personam* jurisdiction in the same manner that ordinary mail actually delivered is insufficient to acquire *in personam* jurisdiction?

The majority suggests that if "certified" mail were substituted for first-class mail in Virginia's long-arm statute, the statute would be constitutional. This type of mail does not increase the likelihood that the mail will arrive at the address to which it was sent. If the address is correct, then ultimate receipt by the defendant is about as likely with first-class mail

as with certified mail. The use of "certified" mail merely provides corroborative evidence that the material is actually sent, and further provides a record of dispatch and delivery. *See State v. Barnes,* 273 Md. 195, 209, 328 A.2d 737, 746 (1974)(stating that "[t]he only logical purpose to be served by directing that the notice be delivered by certified mail is to provide corroboration for bald assertions of having given such notice and a means of tracing and establishing the date of receipt should a dispute concerning the delivery of notice arise"); *Holmes v. Randolph,* 610 N.E.2d 839, 845 (Ind.1993)(stating "use of certified mail will provide a better record of receipt but not necessarily increase the probability the addressee will actually receive the notice. Certified mail is not insured, and 'is dispatched and handled in transit as ordinary mail.' U.S. Postal Service, Domestic Mail Manual subch. 912.11 (Issue 43: June 1992)").

Furthermore, the majority appears to equate first-class mail with the specific method of notice prescribed by Virginia's long-arm statute. In fact, the method of notice under the statute surpasses ordinary first-class mail in that, like "certified" mail, it too provides a record of dispatch. The statute requires the Secretary of the Commonwealth, rather than the plaintiff, to mail the notice and to certify the date and fact of mailing. Hence, a party disinterested in the litigation issues a record of dispatch. This feature enhances the reliability of the notice.

The majority's insistence on registered or certified mail also fails to take into account the fact that these types of mail are not available in certain instances. The postal regulations declare certain matters ineligible for registration. Mail which is "[a]ddressed to post offices to which it cannot be transported safely," for example, may not be registered. United States Postal Service, DOMESTIC MAIL MANUAL, Issue 48, S911.1.4, at S–19 (1995)(hereinafter "DMM"). In addition, mail that requires a signature is, as a practical matter, often unavailable in certain rural areas. Rural letter carriers must dismount from their vehicles in order to deliver registered, certified, or return-receipt mail only if the address is "on the line of travel,

or within one-half mile of the route and has a passable road leading to it." RURAL CARRIER DUTIES AND RESPONSIBILITIES § 313.3, at 63 (1991). If an individual lives farther than one-half mile from the rural route, a letter carrier need not deviate from his or her route. Therefore, return-receipt mail sent to such a remote address is undeliverable, unless the addressee takes affirmative steps to retrieve the mail at a post office. The Uniform Probate Code specifically references such difficulties with rural route delivery and in some circumstances permits service by ordinary mail. *See, e.g.,* Idaho Code § 15-4-303 (1996)(comment to official text)(stating that "[t]he provision for ordinary mail as a substitute for registered or certified mail is provided because . . . registered mail may not be available to reach certain addresses . . . and also certified mail may not be available as a process for service because of the method of delivery used [rural delivery and star route delivery]"); Mont.Code Ann. § 72-4-203 (1995)(same); N.D. Cent. Code § 30.1-25-03 (1995)(same); Utah Code Ann. § 75-4-303 (1996)(same).

In adopting a long-arm statute that provides for service by first-class mail the Virginia legislature concluded that this method is reasonably calculated to inform nonresidents of the pendency of a judicial proceeding against them. This Court should accept the general validity of that determination, and only deny full faith and credit if the mailed process has not been received. Notice by first-class mail certainly has been upheld in a number of cases, and ample authority exists to support Virginia's decision to employ it in the context of notice to nonresidents who, because of real estate transactions or other contacts with the Commonwealth, are amenable to service.[1]

### III.

My primary difficulty with the majority's approach is that it seems to assume that first-class mailed service (hereinafter

---

1. In the instant action, the Miserandinos do not dispute that they had sufficient contacts with the Commonwealth to otherwise subject them to the jurisdiction of the Virginia courts.

"mailed service") is constitutionally permissible to establish *in personam* jurisdiction in some types of law suits, but not others. Under the majority's approach, if mailed service is not constitutionally permissible in a particular type of lawsuit, then statutorily permissible mailed service does not establish *in personam* jurisdiction even if received. The majority's test for determining when mailed service is permissible is at best vague and uncertain, yet the majority does acknowledge that mailed service is adequate in some causes of action, such as bankruptcy. A better approach would be to hold that mailed service is constitutionally permissible in any form of action, and the decision as to when it may be authorized should be left to the legislative or rule making authorities.[2] Some legislatures may choose to adopt a statute that comports with merely the minimum requirements of due process, while others may choose to enhance the constitutional minimum. As one legal commentator has observed:

> "Some service-by-mail statutes require only the satisfaction of minimum constitutional standards. Such statutes permit the use of ordinary mail. . . .
>
> $$* \quad * \quad * \quad * \quad * \quad *$$
>
> In contrast . . ., most service-by-mail statutes contain at least some requirements that are not constitutionally mandated. For example, many statutes demand that the plaintiff use registered or certified mail. . . ." (Footnotes omitted).

*Service of Process by Mail,* 74 Mich. L.Rev. 381, 385–86 (1975).

There are numerous Maryland rules and statutes that authorize service by first-class mail. These rules and statutes

---

**2.** Even if first-class mail service is permitted, litigants should be cautious in using this method of service because if the defendant does not respond, any judgment might be vulnerable to a due process attack. It is easier to prove nonreceipt of first-class mailed notice than it is to prove nonreceipt of certified mail notice where there is a written return receipt.

may be of questionable validity as a result of the Court's decision in the instant case. A few examples should suffice.

To begin with, it is ironic that the Maryland proceedings in the instant case were initiated by service on the Miserandinos by statutorily authorized first-class mail service. The Uniform Enforcement of Foreign Judgments Act, codified in Maryland at § 11–801 *et seq.* of the Courts and Judicial Proceedings Article, provides in § 11–803:

"(a) *Addresses of debtor and creditor to be furnished.*— At the time a foreign judgment is filed, the judgment creditor or the judgment creditor's attorney shall file with the clerk of the court an affidavit showing the name and last known post office address of the judgment debtor and the judgment creditor.

(b) *Clerk to mail notice of filing to debtor.*—(1) The clerk promptly shall mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall note the mailing in the docket."

Notice of the Maryland action against the Miserandinos, therefore, was addressed and sent to the same address in the same manner as was used to obtain service in the Virginia action; yet, this Court today holds that this method of notice is violative of due process.

Several other statutes similarly provide for service of process by first-class mail. As the majority notes, "[t]he Maryland legislature has recently enacted a bill that permits the giving of first notices in an estate case by first-class mail. . . ." 345 Md. at 61, 691 A.2d at 217. This provision is codified in the Maryland Code (1974, 1996 Supp.), Estates and Trusts Article, § 1–103. Unfortunately, doubt is cast on the constitutionality of that statute when the Court states that "[t]his Court has not had an opportunity to pass upon the constitutional sufficiency of notice by first-class mail in this context, and we intimate no opinion on that question." 345 Md. at 62, 691 A.2d at 217.

Title 6 of the Maryland Rules governs all matters in the orphan's courts and before the registers of wills relating to the

settlement of decedents' estates. Rule 6–125 of that title was recently adopted by this Court and is the general rule on service. Rule 6–125 provides:

"**RULE 6–125. SERVICE**

(a) **Method of Service—Generally.**—Except where these rules specifically require that service shall be made by certified mail, *service may be made by personal delivery or by ordinary mail.* Service by certified mail is complete upon delivery. Service by ordinary mail is complete upon mailing. If a person is represented by an attorney of record, service shall be made on the attorney pursuant to Rule 1–321. Service need not be made on any person who has filed a waiver of notice pursuant to Rule 6–126." (Emphasis added).

Did this Court recently adopt an unconstitutional rule? I doubt it.

Other actions commenced by first-class mail are now questionable because first-class mail may be insufficient to acquire *in personam* jurisdiction. These include judicial review actions in workers' compensation cases initiated by first-class mail service. Rule 7–202(d)(2) provides:

"(2) *Service by Petitioner in Workers' Compensation Cases.*—Upon filing a petition for judicial review of a decision of the Workers' Compensation Commission, the petitioner shall serve a copy of the petition by first-class mail on the Commission and each other party of record in the proceeding before the Commission."

Even process initiating criminal proceedings may be served on a defendant by first-class mail under Rule 4–212. That rule provides:

"(a) **General.**—When a charging document is filed or when a stetted case is rescheduled pursuant to Rule 4–248, a summons or warrant shall be issued in accordance with this Rule. Title 5 of these rules does not apply to the issuance of a summons or warrant.

(b) **Summons—Issuance.**—Unless a warrant has been issued, or the defendant is in custody, or the charging

document is a citation, a summons shall be issued to the defendant (1) in the District Court, by a judicial officer or the clerk, and (2) in the circuit court, by the clerk. The summons shall advise the defendant to appear in person at the time and place specified or, in the circuit court, to appear or have counsel enter an appearance in writing at or before that time. A copy of the charging document shall be attached to the summons. A court may order the reissuance of a summons.

(c) **Summons—Service.**—*The summons and charging document shall be served on the defendant by mail or by personal service* by a sheriff or other peace officer, as directed (1) by a judicial officer in the District Court, or (2) by the State's Attorney in the circuit court." (Emphasis added).

These statutes and rules are just some of the first-class mail provisions that may be cast in doubt by the majority's opinion in the instant case. Do these statutes and rules have "special or unique circumstances that would justify relaxation of the ordinary and available methods of service ... ?" 345 Md. at 65, 691 A.2d at 219. We do not know, and the test for special and unique circumstances seems, at best, murky. Apparently bankruptcy proceedings probably pass the test, estate and probate proceedings might pass the test, but long-arm suits do not pass the test.

A better rule would be that, where a permissible method of service of process reasonably designed to reach the defendant is used but does not reach the defendant through no fault or lack of diligence of the defendant and where a judgment is entered against the defendant based on that service of process, the defendant will be deemed to have been denied due process when the failure to receive service prevented the assertion of a viable defense to the cause of action. Of course a heavy burden will be placed upon the defendant to prove nonreceipt of service. The amount of proof necessary to establish nonreceipt of service will depend upon the method of

service chosen by the plaintiff. This rule is entirely consistent with this Court's prior holdings.[3]

## A.

The majority and I agree that:

"At a minimum, the notice must be 'reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"

345 Md. at 53, 691 A.2d at 212 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873). First-class mail meets that test, but it is up to the legislative or rule making body to authorize such service, and when authorized, it should be up to the litigants to decide whether to use first-class mail or an easier-to-prove form of service that would better insulate judgments from later collateral attack for nonreceipt of service.[4]

---

**3.** It is interesting to speculate that the majority might have held first-class mail service to be constitutional had the Virginia statute required the Secretary of the Commonwealth to give notice by registered mail return-receipt requested, restricted delivery, but the Secretary only gave notice to the Miserandinos by first-class mail, as in the instant case. This Court has indicated that the use of first-class mail is adequate, even though the statute requires registered mail, if the first-class mail is actually received. This Court has said:

"even when a statute requires that a notice be given by registered mail it has been held that notice actually received, though by regular mail, is valid. *See* 58 Am.Jur.2d, *Notice* § 27 (1971); *Crummer v. Whitehead*, 230 Cal.App.2d 264, 40 Cal.Rptr. 826 (1964); *Volandri v. Taylor*, 124 Cal.App. 356, 12 P.2d 462 (1932); *Steele v. Trustees of Pittsburg Public Schools*, 121 Cal.App. 419, 9 P.2d 217 (1932); *Drake v. Comptroller of City of New York*, 278 App. Div. 317, 104 N.Y.S.2d 774 (1st Dept.1951)."

*State v. Barnes*, 273 Md. 195, 210, 328 A.2d 737, 746 (1974).

**4.** First-class mail service would be less expensive and less burdensome to plaintiffs as well as defendants and ought to be available as an optional form of service in many causes of action. Plaintiffs in some instances, however, should prefer "certified" over first-class mail, not because the former increases the probability of service, but because it increases the evidence of service and makes any judgment less vulnerable to a later challenge. Whether first-class mail is more or less reliable than "certified" mail often depends upon the individual to be served,

The law presumes that a letter properly mailed is in fact received. *Mohr v. Universal C.I.T. Credit Corp.*, 216 Md. 197, 204, 140 A.2d 49, 51 (1958)(referring to "the universal rule to the effect that the receipt of a letter by the addressee is presumed, when it is shown that the letter, properly stamped and addressed, was posted in the mails"). Although current statistics are unavailable, a law review article published in 1987 reported that:

> "[R]ecords of complaints of nondelivery of all first-class mail show an annual figure of approximately 44,000 claims of nonreceipt out of a total first class mail volume of over 72 billion pieces, for a rate of .00006 of 1 percent (or about 1 claim for every 2 million pieces of mail). Actual loss experience is presumably considerably less than even this tiny fraction of mail volume." (Footnotes omitted)

Kent Sinclair, *Service of Process: Rethinking the Theory and Procedure of Serving Process Under Federal Rule 4(c)*, 73 VA. L. REV. 1183, 1206 (1987)(citing United States Postal Serv., ANNUAL REPORT OF THE POSTMASTER GENERAL 26 (1985)). The Supreme Court has referred to the mails as " 'an efficient and inexpensive means of communication,' upon which prudent men will ordinarily rely in the conduct of important affairs," *see Greene v. Lindsey*, 456 U.S. 444, 455, 102 S.Ct. 1874, 1880, 72 L.Ed.2d 249, 258 (1982) (citation omitted), and has recognized mail service as a constitutionally sufficient means of providing notice in a number of cases. *See Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565, 578 (1988)(stating that "[w]e have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice"). In *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct.

---

rather than the nature of the cause of action. If "certified" mail is sent to the home address of a defendant or defendants who work during postal delivery hours or travel frequently, and who find it too difficult or inconvenient to go to the post office, such mail will often be returned as "unclaimed." A prospective plaintiff who wishes to serve a working defendant at a home address may wish to use ordinary mail and to consider later a back-up form of service if the defendant does not respond and there may be some doubt about receipt of service.

259, 72 L.Ed. 446 (1928), for example, the Supreme Court assessed the validity of a New Jersey statute that permitted notice to nonresident motorists to be accomplished by service upon the Secretary of State. The Court observed that this method of service "would not be fair or due process *unless* such officer or the plaintiff is required to *mail the notice to the defendant, or to advise him, by some written communication,* so as to make it reasonably probable that he will receive actual notice." *Wuchter,* 276 U.S. at 19, 48 S.Ct. at 260, 72 L.Ed. at 449 (emphasis added). Because the New Jersey statute failed to provide for such communication by mail, the Court found the statute to be unconstitutional. The method of notification provided under the Virginia statute, in contrast, appears to conform with *Wuchter's* precise requirements; service was made upon the Secretary of the Commonwealth, who then mailed the notice to the defendants.

The Supreme Court made similar reference to the mail system as an acceptable method of notification in *Schroeder v. New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), a case which involved a municipality's decision to divert a portion of a river. With regard to landowners whose property rights would be adversely affected by this action, the relevant statute required notice by publication. *Schroeder,* 371 U.S. at 209, 83 S.Ct. at 280–81, 9 L.Ed.2d at 257. The Supreme Court found that while newspaper publications and posted notices did not provide the "quality of notice" required by the Due Process Clause, the municipality's constitutional obligation would have been discharged by "the mailing of a single letter." *Schroeder,* 371 U.S. at 213–14, 83 S.Ct. at 283, 9 L.Ed.2d at 260. *See also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180, 188 (1983)(stating that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition . . . ." in the context of notice to mortgagee of tax sale).

In *Mullane, supra,* the Supreme Court specifically referenced *ordinary* mail as an acceptable means of providing notice. At issue in *Mullane* was the validity of notice by publication to trust fund beneficiaries of a judicial settlement

of fund accounts. 339 U.S. at 307–09, 70 S.Ct. at 654–55, 94 L.Ed. at 869–71. Some of the beneficiaries were not residents of the state. *Mullane,* 339 U.S. at 309, 70 S.Ct. at 655, 94 L.Ed. at 871. The Court held that notice by publication was constitutionally inadequate, and stated that those beneficiaries whose whereabouts were ascertainable should have been informed of the accounting "at least by *ordinary* mail." [5] *Mullane,* 339 U.S. at 318, 70 S.Ct. at 659, 94 L.Ed. at 875 (emphasis added).

In assessing the minimal requirements of due process, therefore, the Supreme Court has repeatedly referenced the ordinary mail system as a constitutionally sufficient mechanism by which to provide notice. Virginia's decision to permit service by mail, therefore, seems in accord with the minimum requirements of due process as defined by the Supreme Court.

### B.

Service by ordinary mail also has been upheld by numerous lower courts. Service by first-class mail in a bankruptcy proceeding, for example, withstood direct constitutional attack in *Matter of Park Nursing Center, Inc.,* 766 F.2d 261 (6th Cir.1985). Federal Bankruptcy Rule 7004 provides in pertinent part:

"**(b) Service by first class mail.** Except as provided in subdivision (h), in addition to the methods of service authorized by [certain Federal Rules of Civil Procedure], service may be made within the United States by *first class mail* postage prepaid as follows:

(1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession."

---

5. For those beneficiaries whose whereabouts could not be ascertained with due diligence, notice by publication was held to be sufficient. *Mullane v. Central Hanover B. & T. Co.,* 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865, 875 (1950).

FED. R. BANKR. 7004(b)(1)(1994, 1996 Cum.Supp.)(emphasis added). A debtor, against whom a default judgment in a Chapter 11 bankruptcy proceeding had been entered, challenged the constitutionality of an earlier version [6] of this rule on the grounds that: (1) due process requires personal service; (2) a method of service more likely to accomplish service should be attempted before resorting to first-class mail; (3) safeguards to ensure receipt of a first-class letter were lacking; and (4) the rule contained no requirement that the address on the envelope be correct. *Park Nursing Center,* 766 F.2d at 263–64. In rejecting these assertions, the United States Court of Appeals for the Sixth Circuit noted that *"Mullane* does not require the very best means of serving process, only a means that is reasonably calculated to reach the party." *Park Nursing Center,* 766 F.2d at 264. In light of other rules of civil procedure that provide a mechanism by which to set aside a default judgment, the court concluded that the rule in question satisfies due process. *Park Nursing Center,* 766 F.2d at 263–64. Bankruptcy court decisions subsequent to *Park Nursing Center* have consistently supported the constitutionality of service by first-class mail. *See, e.g., In Re M & L Business Mach. Co., Inc.,* 190 B.R. 111, 115–16 (D.Colo.1995)(observing that "strict compliance with Rule 7004 serves to protect due process rights. . . ."); *Leavell v. Karnes,* 143 B.R. 212, 217 (S.D.Ill.1990)(stating that "[s]ervice under Rule 7004(b) comports with the procedural due process requirements identified by the Supreme Court in *Mullane.* . . .").

The Minnesota Supreme Court, similarly, upheld the constitutionality of a statute permitting ordinary mail service upon a nonresident motorist in *Schilling v. Odlebak,* 177 Minn. 90, 224 N.W. 694 (1929). The statute at issue was strikingly similar to Virginia's long-arm statute. Specifically, it allowed substituted service upon the Secretary of State " 'provided, that notice

---

**6.** FED R. BANKR. 704(c)(1) similarly permitted service "by mailing a copy of the summons, complaint, and notice to [an individual's] dwelling house or usual place where he regularly conducts his business or profession."

of such service and a copy of the process are within ten days thereafter sent *by mail* by the plaintiff to the defendant at his last known address and that the plaintiff's affidavit of compliance with the provisions of this act are attached to the summons.'" *Schilling,* 224 N.W. at 695 (quoting L.1927, p. 557, c. 409, 1 Mason Minn. St. § 2684–8)(emphasis added). Relying in part on *Wuchter, supra,* the court concluded that "it is reasonably certain that the defendant will receive actual notice, and that adequate opportunity is afforded him to defend." *Schilling,* 224 N.W. at 696.

In a more recent decision, the Indiana Supreme Court upheld a statute that permitted notice of the impoundment and potential disposal of abandoned vehicles by first-class mail. *Holmes, supra.* The plaintiff in *Holmes* contended that this method of notification was constitutionally flawed in that it "fail[ed] to provide notice in the best available manner to assure delivery to the known owner prior to depriving the owner irrevocably of a property interest." 610 N.E.2d at 840. Although the trial court entered summary judgment in the plaintiff's favor, based in part on its conclusion that due process requires certified mail, return receipt requested, *see id.,* the Indiana Supreme Court reversed that judgment. *Holmes,* 610 N.E.2d at 846. The court noted that "[t]he notice by first class mail given to owners of abandoned vehicles must be viewed in light of the Supreme Court's acknowledgement in dicta that 'the mails provide an "efficient and inexpensive means of communication," ... upon which prudent men will ordinarily rely in the conduct of important affairs.'" *Holmes,* 610 N.E.2d at 844 (quoting *Greene v. Lindsey,* 456 U.S. at 455, 102 S.Ct. at 1880, 72 L.Ed.2d at 258, in turn quoting *Mullane,* 339 U.S. at 319, 70 S.Ct. at 660, 94 L.Ed. at 876). Applying the *Mathews v. Eldridge* test, the court concluded that the method of notification prescribed by the statute satisfied due process, *see Holmes,* 610 N.E.2d at 845 (observing that "[t]he risk that failure of ... notice will lead to deprivation of an individual's vehicle is modest"), and that "[f]irst class mail notice sent to the record address of the vehicle owner is reasonably calculated to apprise the owner of the pendency of

abandoned vehicle proceedings." *Holmes,* 610 N.E.2d at 846. See also *Service of Process by Mail,* 74 Mich. L.Rev. at 382, where the author concludes that "service by mail without a return-receipt requirement complies with the due process clauses of the fifth and fourteenth amendments," (citations omitted), and further "concludes that, in light of the procedures available to a defendant to challenge service [by ordinary mail] and to reopen default judgments entered against him, the requirement of a signed receipt is unduly harsh on plaintiffs." *Id.*

Service by ordinary mail clearly satisfies due process in a variety of contexts. Virginia has apparently concluded that the use of first-class mail under its long-arm statute is "reasonably calculated" to reach defendants. Maryland courts should defer to that assessment and limit their inquiry to whether the Miserandinos were afforded due process in the application of this statutory method of service. Since first-class mail is "reasonably calculated" to reach a recipient, if the Miserandinos actually received the mailed service authorized by the Virginia statute, they have literally received all the process they were due. I respectfully dissent.

Judges RODOWSKY and RAKER have authorized me to state that they join in the views expressed in this dissenting opinion.