Gilbert L. HOLMES, Commissioner of the Bureau of Motor Vehicles of Indiana, Appellant (Defendant Below),

v.

Marilyn C. RANDOLPH, Individually and as a Representative of All Other Individuals Similarly Situated, Appellee (Plaintiff Below).

No. 29S00–9210–CV–844.

Supreme Court of Indiana.

March 16, 1993.

Linley A. Pearson, Atty. Gen., Robert K. Robisch, Deputy Atty. Gen., for appellant.

John Wood, Mark W. Rutherford, Bamberger & Feibleman, Indianapolis, for appellee.

SHEPARD, Chief Justice.

This appeal presents a question of first impression for this Court: whether the notice provisions in the Indiana Code chapter on towing, impoundment and disposal of "abandoned vehicles" violate federal due process. We hold they do not.

*Procedural History*

Gilbert L. Holmes, current commissioner of the Indiana Bureau of Motor Vehicles, submits to this Court his direct appeal of a judgment granting Marilyn C. Randolph

and a plaintiff class declaratory and injunctive relief. The trial court proclaimed unconstitutional the sale and disposal provisions of the abandoned vehicle chapter of the Indiana Code, Ind.Code Ann. § 9–9–1.1, et seq. (West Supp.1987).[1] It enjoined the disposal of abandoned vehicles without actual notice to the registered owners, or notice by certified mail or its equivalent, and enjoined the assessment of towing and storage fees as a condition of redelivery without reasonable opportunity for a hearing.

Randolph bases her claim against the commissioner on 42 U.S.C. § 1983, alleging that her due process rights were violated by BMV's impoundment and sale of her automobile as an abandoned vehicle without affording her actual notice. On Randolph's motion, the trial court permitted the suit to proceed as a class action on behalf of "all present and future automobile owners whose automobile is or will be seized and sold by the Indiana Bureau of Motor Vehicles as allegedly abandoned vehicles, pursuant to the procedures of Indiana Code 9–9–1.1 et seq., who did not or will not receive actual notice of the seizure and proposed sale before disposal of the vehicle." (Record at 51).

In her amended complaint, Randolph claimed that the procedures prescribed by Ind.Code § 9–9–1.1–6(b)(3)[2] for notifying the owner of an "abandoned" vehicle of its impoundment and prospective disposal do not comport with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. She contended that they fail to provide notice in the best available manner to assure delivery to the known owner prior to depriving the owner irrevocably of a property interest. The complaint claimed that all class members are similarly deprived.

Randolph and the class requested the following relief: (1) a judgment declaring that the notice procedures of Ind.Code § 9–

9–1.1–6(b)(3) violate due process; (2) a preliminary injunction enjoining the commissioner from allowing the sale or disposal of automobiles pursuant to Ind.Code § 9–9–1.1, without actual notice to the registered owners or a method of giving notice which provides the best available means to assure receipt of actual notice before any disposal; (3) attorney fees pursuant to 42 U.S.C. § 1988; and (4) all other just and proper relief.

Both sides moved for summary judgment, and on March 17, 1992, the trial court entered summary judgment in favor of Randolph and the class. The court concluded, among other things, that due process requires actual notice of a pending deprivation of property; that first class mail does not provide a record of receipt of notice; and that certified mail, return receipt requested, is required under the Due Process Clause. The court also held that due process requires the opportunity for a hearing before any sale.

As relief, the trial court granted plaintiff a declaratory judgment and a permanent injunction. It declared that without notice by certified mail and the opportunity for a "predisposal hearing" the statute violated due process. It enjoined the commissioner from taking any action to dispose of vehicles without such notice and hearing. On defendant's motion, the court granted a stay pending outcome of this appeal.

### Underlying Facts

#### 1. Randolph's Claim

This case arises from BMV's impoundment and sale of Randolph's 1980 Honda Accord LX. On January 16, 1987, Delaware & South Towing Co. ("D & S") towed Randolph's automobile from a grassy area in front of her apartment, located at 8247 Harcourt Rd., Indianapolis. D & S had been told to tow the automobile by a pri-

---

1. Most references in this opinion are to these provisions, which were in effect at the time of the events giving rise to this case. They became law as an Act of April 9, 1981, Pub.L. No. 128–1981, 1981 Ind.Acts 1181. These provisions have since been repealed and replaced by Ind.

Code Ann. § 9–22–1, et seq. (West 1992 & West Supp.1992). The judgment expressly invalidates the current law, which is largely the same.

2. Now codified at Ind.Code Ann. § 9–22–1–20 (West 1992).

vate party, apparently the manager of Randolph's apartment complex.

On or about January 16, 1987, Randolph entered the hospital due to an incapacitating illness. She was in the hospital from mid-January 1987 until May 1987. Randolph last saw her automobile before she entered the hospital in January 1987.

On February 16, 1987, the BMV sent a first class letter regarding Randolph's automobile to her Harcourt Road address. The letter identified the automobile, notified Randolph that the car had been towed by D & S, and told her how she could recover it:

> IN ORDER TO OBTAIN A RELEASE OF THIS VEHICLE IT IS NECESSARY FOR YOU TO SHOW PROOF OF OWNERSHIP AND MEET THE REQUIREMENTS OF THE DEPARTMENT OF LAW ENFORCEMENT HAVING PLACED THE VEHICLE UNDER PROTECTIVE CUSTODY. TOW-IN CHARGES PLUS STORAGE WILL ACCRUE FROM THE DATE OF TOW-IN. IT IS THE OWNER AND ANY LIENHOLDERS [sic] LEGAL RESPONSIBILITY FOR ALL COSTS INCURRED IN REMOVING AND STORING THE VEHICLE OR PARTS. IN THE EVENT YOU DO NOT CLAIM THIS VEHICLE WITHIN FIFTEEN (15) DAYS FROM THE DATE OF THIS NOTICE, THE VEHICLE WILL BE SOLD AT PUBLIC AUCTION AS AN ABANDONED VEHICLE, PURSUANT TO IC 1971, 9-9-1.1.

(Record at 115).

On March 10, 1987, Randolph's automobile was sold at an auction held on the premises of D & S, to an employee of D & S for $430, including towing charges. Randolph contends that at the time of sale her automobile was worth approximately $1,750 wholesale and $2,550 retail. Pursuant to Ind.Code § 9–9–1.1–14(b)[3] Randolph received nothing from the sale.

Randolph says she received neither the BMV notice nor any other communication indicating that her automobile was towed and would be sold. The letter notice sent to Randolph was not returned to the BMV Abandoned Vehicle Department from the post office, and the department did not receive any other indication that it was not deliverable. The department had no means for determining whether the notice had been received, and can neither confirm nor deny that Randolph received notice.

### 2. *BMV Abandoned Vehicle Procedures*

Randolph does not claim that the BMV failed to follow statutory procedure in towing and impounding her automobile. Rather, she challenges the sufficiency of the statutory notice provided to owners of abandoned vehicles. A review of the statutory provisions and BMV's procedures is therefore in order.

*The Statutory Provisions.* Ind.Code § 9–9–1.1, et seq., the Indiana abandoned vehicle scheme in existence at the time of this case, allows the disposal of vehicles defined as "abandoned vehicle[s]" under Ind.Code § 9–9–1.1–2.[4] The definition includes vehicles located on public property illegally, Ind. Code § 9–9–1.1–2(1), and vehicles that are six or more model years old and mechanically inoperable, and left on private property continuously in a location visible from public property for more than thirty days, Ind.Code § 9–9–1.1–2(7). Moreover, under Ind.Code § 9–9–1.1–10, a vehicle may be towed upon complaint of a private property owner that a vehicle has been left on the property for forty-eight hours or more without the consent of the property owner.[5]

Both the current and repealed chapters on abandoned vehicles provide for pre-tow

---

3. Now codified at Ind.Code Ann. § 9–22–1–27 (West 1992).

4. "Abandoned vehicle" is now defined at Ind. Code Ann. § 9–13–2–1 (West 1992).

5. For vehicles believed to be abandoned on rental property, the 1991 revisions impose additional requirements on property owners. Rental property owners must place a tag notice on the purported abandoned vehicle and deliver by certified mail a copy of the information contained in the tag notice to the vehicle owner. Ind.Code Ann. § 9–22–1–15 (West 1992).

and post-tow notice to the owner of the vehicle. The section applicable to this case, Ind.Code § 9–9–1.1–5(a), requires an officer to attach a notice tag in a prominent place on the vehicle believed to be abandoned. The tag is to state:

(1) The date, time, officer's name, public agency, and address and telephone number to contact for information.

(2) That the vehicle or parts are considered abandoned.

(3) That the vehicle or parts will be removed after seventy-two (72) hours.

(4) That the owner will be held responsible for all costs incidental to the removal, storage, and disposal, and if not paid the owner's registration privileges will be suspended on that car.

(5) That the owner may avoid costs by removal of the vehicle or parts within seventy-two (72) hours.

*Id.*[6] If the officer believes the vehicle is worth more than a hundred dollars, the officer must make a reasonable effort to ascertain the owner before tagging it. Ind. Code § 9–9–1.1–5(d). If the vehicle is not removed after seventy-two hours, the officer will require it to be towed to a storage area. *Id.*[7]

Within seventy-two hours after towing, the public agency which authorized the tow must prepare and forward to BMV an "abandoned vehicle report" containing a description of the vehicle, including its make, model, engine number, identification number, and license plate number. Ind. Code § 9–9–1.1–6(a)[8]

After it receives the abandoned vehicle report, the BMV must take steps to identify the vehicle owner and to notify the owner of the impoundment and impending sale. Ind.Code § 9–9–1.1–6(b)[9] charges the BMV to:

(1) conduct a reasonable search through the national automobile theft bureau and the Indiana state police department to determine whether the vehicle or parts have been reported as stolen;

(2) conduct a reasonable search of bureau records to determine the owner of the vehicle or parts or lienholder of record; and

(3) if a reasonable search discloses the name and address of the owner or lienholder, mail a written notice, by first class mail, to:

(A) the owner, with a copy to any lienholder if the bureau disposes of the vehicle; or

(B) the public agency if the public agency disposes of the vehicle;

indicating that the vehicle or parts have been impounded at a certain location and must be removed within fifteen (15) days of the date of mailing of the notice and advising that the vehicle or parts will be disposed of after that time.

The BMV must also advise the owner that all costs of removal and storage are the owner's legal responsibility. Ind.Code § 9–9–1.1–6(c). If the owner or lienholder does not reclaim the vehicle within fifteen days after the notice is mailed, the BMV or municipal body will sell the vehicle to the highest bidder at a public sale. Ind.Code § 9–9–1.1–7(b)[10] The statute requires publication of a newspaper announcement one week before the sale. Such announcements usually contain the make, model and years of automobiles scheduled for public auction.

*BMV Procedure.* Processing abandoned vehicle reports and preparing and sending notices of impoundment and impending sale is a multi-step process involving numerous

---

**6.** The portion of the new statute relating to pre-tow tag notice, Ind.Code Ann. § 9–22–1–11 (West Supp.1992), is virtually identical to the prior provision of Ind.Code § 9–9–1.1–5(a). (The current version does not contain the registration suspension option).

**7.** The language of Ind.Code Ann. § 9–22–1–14 (West 1992) is essentially identical to that in old § 5(d).

**8.** The current provision, Ind.Code Ann. § 9–22–1–19(a) (West Supp.1992), is virtually identical to the prior provision, § 6(a).

**9.** The current provision specifying BMV procedure regarding towed, abandoned vehicles, Ind. Code Ann. § 9–22–1–20 (West 1992), is virtually identical to this prior provision.

**10.** Currently codified at Ind.Code Ann. § 9–22–1–22 to –23 (West 1992).

BMV employees. About 50,000 abandoned vehicle reports are filed annually, and approximately 14,000–15,000 are subsequently sold as abandoned vehicles.

When the BMV Abandoned Vehicle Department receives abandoned vehicle reports in the mail, department employees enter information from the reports into computer databanks which contain all BMV title and registration files. The system provides the department information on ownership of the vehicles and produces a "run" in the form of computer-generated letters on the Monday following receipt of the reports. The department sends the letters to an independent mail department, where they are mailed to the appropriate lien holder and/or owner by first class mail. The vehicle file is then placed in the "ready to sell" file, meaning the department must wait fifteen days before the vehicle becomes available for auction. The department makes no determination as to whether a vehicle is actually abandoned.

Absent a return from the post office, the department cannot know for certain if a letter is received by the vehicle owner. It assumes notice letters are received through the ordinary course of first class mail. When a notice letter is returned as undeliverable, the department takes additional steps to ensure delivery only to the extent there were errors manifest on the face of the letter or the post office provides a correct address. The department itself does not contact the post office to obtain a forwarding address for a returned letter, and it makes no additional attempt to obtain the correct address.

### Contentions

The commissioner argues that the trial court erred in concluding as a matter of law that the abandoned vehicle statutes deny Randolph and similarly-situated persons of the property interest in their vehicles without due process of law. He con-

tends that these provisions comport with due process because they guarantee notice placed on the vehicles themselves and first class mail notice of impoundment and impending sale. He says these notices are reasonably calculated to apprise interested parties of the possible disposal. Other Indiana procedural provisions, the commissioner notes, provide for notice by first class mail. *E.g.*, Ind.Code Ann. § 4–21.5–3–1 (West 1991) (service of papers); Ind. Code Ann. § 6–8.1–5–1 (West Supp.1992) (notice of tax assessments); Ind. Trial Rule 72(D) (notice of orders or judgments). *But see* Ind.Code Ann. § 6–1.1–24–4(a) (West Supp.1992) (county auditor required to send by certified mail notice of tax sale to owners of real property at last known address).

The commissioner contends that any additional benefits provided by certified mail are outweighed by the enormous burden a certified mail requirement would place on state resources. Certified mail would impose substantial costs in additional postage, he says, as well as additional labor costs required to prepare certified letters. Appellant claims these added costs are not justified given the sufficiency of the procedure presently provided by the BMV statutes.

█ Appellee Randolph argues that first class mail notice is constitutionally deficient because it does not ensure actual notice. Appellee contends that the multistep procedures of the abandoned vehicle department further compound the inadequacies of first class mail notice. According to Randolph, the numerous steps involved, coupled with the department's lack of supervision over actual mailing, create doubt that notice is sufficient.

### Analysis of the Notice Claim

We turn to the constitutionality of the notices required by the abandoned vehicle statute.[11]

---

**11.** Count II of Randolph's amended complaint alleged that the failure of Indianapolis to provide her with the opportunity for a hearing prior to the towing of her automobile resulted in a deprivation of property without due process of law. This claim was dismissed before sub-

mission of the summary judgment motions. Moreover, her post-tow hearing claim (Count III) was omitted from her amended complaint and therefore removed from trial court consideration. Because a judgment which does not conform to the pleadings is beyond the court's

Randolph possessed a property interest in her automobile, and the towing, impoundment and sale of her automobile constituted a deprival of that interest. The Due Process Clause guarantees a fair procedure, i.e., "due process," before a state may effect a deprivation of property. The U.S. Supreme Court has explained that " 'due process' is a flexible concept," *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985), and "the processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." *Id.*

■ At a minimum, the Due Process Clause requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Id.* at 314, 70 S.Ct. 652 at 657. The notice by first class mail given to owners of abandoned vehicles must be viewed in light of the Supreme Court's acknowledgement in dicta that "the mails provide an 'efficient and inexpensive means of communication,' . . . upon which prudent men will ordinarily rely in the conduct of important affairs." *Greene v. Lindsey*, 456 U.S. 444, 455, 102 S.Ct. 1874, 1880, 72 L.Ed.2d 249 (1982); *see Mullane*, 339 U.S. at 319–20, 70 S.Ct. at 659–60; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799–800, 103 S.Ct. 2706, 2711–12, 77 L.Ed.2d 180 (1983) (notice by publication or posting, or mailed notice to a property owner both insufficient to notify a mortgagee of pending tax sale; due process requires personal notice or mail notice to identifiable mortgagee).

■ To determine whether the notice provided satisfies due process, U.S. Supreme Court rulings dictate that we balance the governmental and private interests affected by the statutory scheme. The analysis involves a consideration of three factors:

[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ The towing, impoundment and sale of a vehicle pursuant to the statute affects the owner's property interest in her vehicle. This interest is a significant one, as a vehicle often represents a considerable financial investment and an essential means of transportation for the owner. The value at stake, of course, is usually not as great as that involved in, say, the tax sale of real property. That being so, the damage flowing from error is less.

Appellee recognizes that the risk of erroneous deprivation of a vehicle through the BMV procedures could be considered small. She does argue that BMV procedures allow the possibility of mis-mailing, however, and may fail to notify people like Randolph of the pendency of the proceedings. For example, such notice might not reach people who are on vacation or temporarily removed from their domicile. Appellee argues that notice by certified mail would provide an "additional benefit" over first class mail. Certified mail would provide the BMV evidence of whether or not notice was received. Randolph says the added cost of certified mail would not impose an

jurisdiction and void, *State ex rel. Surprise v. Porter Circuit Court* (1948), 226 Ind. 375, 80 N.E.2d 107, we see no need to consider that part of the trial court's judgment. We note the Attorney General's contention that there is an oppor-

tunity for a hearing on the pending sale of an abandoned vehicle under a section in Indiana's administrative procedure act, Ind.Code Ann. § 4–21.5–3–6 (West 1991).

undue hardship on the state, as the cost could be recovered through the proceeds of abandoned vehicle sales.

We conclude under the *Mathews* analysis that the notice of impoundment and impending sale provided by the abandoned vehicle statute satisfies due process. The statute actually provides a vehicle owner two forms of notice: the pre-tow tag and the post-tow letter. First, a pre-tow notice is attached in a prominent place on the vehicle, and the tagged automobile remains in place for at least seventy-two hours before it may be towed. Such notice should reach most owners—people who use or at least see their vehicle daily. Second, after a vehicle is towed, the statute guarantees another attempt at notice, a notification letter by first class mail fifteen days before the vehicle may be auctioned.

The risk that failure of BMV notice will lead to deprivation of an individual's vehicle is modest. *See, e.g., Kohn v. Mucia*, 776 F.Supp. 348, 358 (N.D.Ill.1991) ("[I]n general the risk of an erroneous deprivation is small, since it is not disputed that first class mail is generally reliable."). Beyond her own situation, Randolph provided the trial court with no evidence that any other automobile has ever been sold without notice reaching the owner.[12] Indeed, the evidence in the record suggests that the great majority of owners either receive the pre-tow notice and move their vehicles or receive the letter notice and reclaim them. *Supra* at 842–43. When there is no evidence that operation of the abandoned vehicle statute has worked an injustice on automobile owners at large, due process is

not offended by the mere possibility that mail notice might not reach persons on vacation or removed from their homes.[13] The Due Process Clause

> does not require that 'the procedures used to guard against an erroneous deprivation ... be so comprehensive as to preclude any possibility of error,' and ... we have emphasized that the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard.

*Walters*, 473 U.S. at 320–21, 105 S.Ct. at 3189 (citations omitted) (quoting *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979)). "[T]he fundamental fairness of a particular procedure does not turn on the result obtained in any individual case; rather, 'procedural due process rules are shaped by the risk of error inherent in the ... process as applied to the generality of cases, not the rare exceptions.'" *Walters*, 473 U.S. at 321, 105 S.Ct. at 3189 (quoting *Mathews*, 424 U.S. at 344, 96 S.Ct. at 907).

Randolph's contention that the BMV could readily recoup the additional cost of certified mail seems correct. On the other hand, use of certified mail will provide a better record of receipt but not necessarily increase the probability the addressee will actually receive the notice. Certified mail is not insured, and "is dispatched and handled in transit as ordinary mail." U.S. Postal Service, Domestic Mail Manual subch. 912.11 (Issue 43; June 1992). In fact, certified mail carries with it obstacles to delivery not present with first class mail.

---

**12.** The U.S. Supreme Court found one method of notice unconstitutional based on evidence of the method's failure to provide actual notice in a significant number of cases. *Greene*, 456 U.S. 444, 102 S.Ct. 1874. In *Greene*, the plaintiff's due process claim challenged the state's procedure of posting notice of eviction on the door of the dwelling unit that is the subject of the eviction action. Evidence that posted notices were often removed by children or other tenants persuaded the Court that such notice alone was insufficient to satisfy due process. *Id.* at 453, 102 S.Ct. at 1879. The Court suggested that such notice might satisfy due process, however, if the posting were coupled with a more reliable

form of notice, such as notice by mail. *See id.* at 455–56, 102 S.Ct. at 1880–81.

**13.** We note that in this case, the time period between the BMV's letter notice (February 16, 1987) and the sale of Randolph's automobile (March 10, 1987) exceeded three weeks (twenty-two days), a week longer than the statutorily-mandated minimum fifteen-day waiting period. Furthermore, the total time between the tow (January 16, 1987) and sale of the automobile exceeded seven weeks (fifty-three days). If such a delay represents the BMV's routine practice, the likelihood of erroneous deprivation of an automobile owned by a vacationing or absent person is even further reduced.

Because certified mail can only be delivered in person to the addressee or the addressee's representative, *see id.* at subch. 912.51, first class mail is actually more likely than certified mail to reach persons who are often away from home for extended periods. With certified mail, upon the first unsuccessful attempt at delivery the carrier must leave a notice and the post office retains the item. *Id.* at subch. 912.55. If the addressee does not call for the item within five days, a final notice is issued and the item must be returned to sender within fifteen days. *Id.* In contrast, with regular mail the addressee controls delivery. *Id.* at subch. 153.11a. Absent contrary directions from the addressee, first class mail is delivered as addressed. *Id.*

 First class mail notice sent to the record address of the vehicle owner is reasonably calculated to apprise the owner of the pendency of abandoned vehicle proceedings. Licensed drivers and permit holders in Indiana have a duty to notify the BMV of any change in address. Ind.Code Ann. § 9–1–4–36 [14]. The abandoned vehicle department is therefore entitled to assume a notice letter will reach the vehicle owner's actual, current address. *Compare Elizondo v. Read* (1992), Ind., 588 N.E.2d 501, 504 (fact that mortgagee chose not to ensure receipt of tax sale notice through filing a required form with state not grounds to demand that state use more burdensome, costly method of notice).

The State of Indiana has a substantial interest in providing its citizens safe and passable thoroughfares and livable neighborhoods free of the hazards of abandoned vehicles. In the former abandoned vehicle statute, the Indiana Legislature specifically found that "abandoned vehicles are a public nuisance and a safety and health hazard." Act of April 9, 1981, Pub.L. No. 128–1981, § 1, 1981 Ind. Acts 1181, 1182. The public interest in expeditiously removing 50,000 abandoned vehicles from the streets each year demands a scheme that operates rapidly and systematically, with minimal

drain on public resources. Given the reasonable effectiveness of the two forms of notice already provided by the abandoned vehicle statute, we hold that the notice provisions of the abandoned vehicle statute do not violate the Due Process Clause of the Fourteenth Amendment.

The judgment of the trial court is reversed.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.

---

**14.** This section has since been repealed. It was part of an Act of March 5, 1986, Publ.L. No. 42–1986, § 13, 1986 Ind. Acts 772, 782. The current version is Ind.Code Ann. § 9–24–13–4 (West 1992).