# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**BRYAN K. REDMOND**
Feiwell & Hannoy, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
PATRICIA HARRIS:

**DAVID T. BARID**
UAW Legal Services Plan
Kokomo, Indiana

ATTORNEY FOR APPELLEE
SHAWN HARRIS:

**MATTHEW J. ELKIN**
Kokomo, Indiana



FILED

Apr 04 2013, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2002, MORGAN STANLEY ABS CAPITAL I INC. TRUST 2002-HE3, | ) ) ) ) ) ) | |
| Appellant, | ) ) | |
| vs. | ) ) | No. 34A02-1206-MF-467 |
| PATRICIA HARRIS and SHAWN HARRIS, | ) ) | |
| Appellees. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable George A. Hopkins, Judge
Cause No. 34D04-0908-MF-914

**April 4, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement dated as of November 1, 2002, Morgan Stanley ABS Capital I Inc. Trust 2002-HE3 (the "Bank") appeals the trial court's dismissal of its cause of action against Patricia Harris and Shawn Harris (together the "Borrowers") and denial of its motion for relief from the court's Quiet Title Decree finding that the Bank no longer held any interest in certain real property owned by Borrowers. The Bank raises four issues, which we consolidate and restate as whether the court abused its discretion in denying its motion for relief from judgment and dismissing its cause of action. We reverse and remand.

FACTS AND PROCEDURAL HISTORY

*Loan*

In July 2002, Accredited Home Lenders, Inc. ("Accredited") made a loan to Borrowers in the original principal amount of $265,000 for the purchase of certain real estate in Howard County, Kokomo, Indiana (the "Property"), and the Borrowers executed a promissory note (the "Note") and a mortgage (the "Mortgage") granting Accredited a security interest in the Property. Accredited transferred the Note to the Bank and executed an Assignment of Mortgage dated July 31, 2002. Patricia and Shawn stopped making payments under the Note, according to the Bank, after February 2009 and separated on or about April 2009.

*Foreclosure Proceedings*

The Bank filed a Complaint on Note and to Foreclose Mortgage on Real Estate on August 13, 2009, alleging that the Borrowers were in default under the Note and that

2

pursuant to the Note and Mortgage the Bank had accelerated the indebtedness due under the Note and requesting a judgment against the Borrowers consisting of the outstanding unpaid principal balance together with interest, late charges, expenses, and reasonable attorney fees, and a judgment ordering the sale of the mortgaged Property. The Bank attached copies of the Note, the Mortgage, and the Assignment of Mortgage to its complaint as exhibits.[1]

On October 1, 2009, Shawn filed an answer to the complaint, affirmative defenses, and a counterclaim against the Bank. In his counterclaim, Shawn alleged that (1) he believed that all payments due and owing had been paid to the Bank, (2) the Bank did not properly record the Assignment of Mortgage prior to filing the lawsuit, (3) the Bank was fraudulently seeking action against him, (4) the Bank's complaint violated the Fair Debt Collection Practices Act, (5) the Bank should have communicated with him through his attorney and having failed to do so violated the Fair Debt Collection Practices Act, (6) there was a failure of consideration, (7) the Bank was equitably estopped from its action, and (8) the Bank failed to satisfy conditions precedent entitling Shawn to dismissal. Shawn requested that the court order the Bank to amend its complaint to include an itemized statement alleging the specific default or to dismiss the matter with prejudice against the re-filing of the same.

On November 3, 2009, the Bank filed an amended complaint alleging the Borrowers were in default and requesting a judgment against the Borrowers for $244,167.72, the unpaid principal balance of the loan, together with interest, late charges,

---

[1] The copy of the Assignment of Mortgage attached to the Bank's complaint indicates that it was executed by Accredited on July 31, 2002, and does not contain a file-stamp or other information indicating that it was recorded in the mortgage or other records of the county.

default-related expenses, and reasonable attorney fees and costs, and a judgment ordering the sale of the Property. The Bank attached copies of the Note, the Mortgage, and the Assignment of Mortgage to its amended complaint as exhibits.[2] Patricia filed an answer to the Bank's complaint on November 24, 2009. On December 1, 2009, Shawn filed an answer to the Bank's amended complaint together with affirmative defenses, a counterclaim against the Bank, and a motion to dismiss. In this counterclaim, Shawn alleged, in addition to its previous allegations, that the Bank filed its amended complaint one day late.

The Bank filed an answer to Shawn's counterclaim and a motion for a more definite statement on December 18, 2009, and Shawn filed a response on January 4, 2010, which stated among other things that assignments must be filed with the County Recorder under Ind. Code § 32-29-1-8, an assignment must have the location and business address of the person to whom the mortgage is transferred or assigned under Ind. Code § 32-29-2-2, that the recorded assignment did not occur until September 2, 2009, about three weeks after the foreclosure proceedings began, and that the assignment did not list such a location or business address.[3]

---

[2] The copy of the Assignment of Mortgage attached to the Bank's amended complaint bears a file-stamp showing that the document had been filed in the office of the Howard County, Indiana, Recorder on September 2, 2009.

[3] Ind. Code § 32-29-1-8 provides that "[a]ny mortgage of record or any part of the mortgage may be assigned by the mortgagee or any assignee of the mortgage, either by an assignment entered on the margin of the record, signed by the person making the assignment and attested by the recorder, or by a separate instrument executed and acknowledged before any person authorized to take acknowledgments, and recorded in the mortgage records of the county." Ind. Code § 32-29-2-2 provides that "[i]n order to be recorded, a written instrument that transfers or assigns a mortgage under this chapter must state the location and business address of the person to whom the mortgage is transferred or assigned."

Also, Ind. Code § 32-29-8-1 provides that "[i]f a suit is brought to foreclose a mortgage, the

4

On February 24, 2010, the Bank filed a response to Shawn's more definite statement and his motion to dismiss in which the Bank argued that it is the real party in interest and that it complied with the Indiana Trial Rules and Indiana Code in bringing its action. On March 22, 2010, the court ruled in part that the Bank's amended complaint was not timely filed and that the written instrument that purports to transfer or assign the Mortgage does not state the location or business address of the person to whom the mortgage was transferred or assigned. The court requested the parties to schedule a status conference with the court. On April 16, 2010, upon motion filed by Shawn, the court set a status hearing for May 5, 2010. On May 5, 2010, a status hearing was held at which counsel for the Bank and the Borrowers appeared, and an entry in the court's chronological case summary ("CCS") on that date indicates that the "Court will set this matter for summary judgment upon presentation of the appropriate pleadings." Appellant's Appendix at 6. There are no entries in the CCS dated from May 5, 2010, until February 23, 2011.

### *Trial Rule 41(E) Proceedings*

The court entered an entry in its CCS on February 23, 2011, which provides:

> No action having been taken herein for a period in excess of 60 days, the Court on its own motion, pursuant to TR 41(E), now orders a hearing for March 28, 2011 at 8:30 a.m., for the purpose of dismissal of the complaint, petition, counter-claim, cross-complaint, or other pleadings requesting relief. The Court further directs the parties to appear and show cause, if any, why such pleadings should not be ordered dismissed.

Id. at 6. The CCS entry for February 23, 2011, includes the notation "Notice: A." Id.

mortgagee or an assignee shown on the record to hold an interest in the mortgage shall be named as a defendant," and Ind. Code § 32-29-8-2 provides in part that "[a] person who: (1) is assigned a mortgage and fails to have the assignment properly placed on the mortgage record . . . is bound by the court's judgment or decree as if the person were a party to the suit."

5

On March 28, 2011, a hearing was held regarding dismissal of the action at which counsel for Patricia and Shawn appeared and counsel for the Bank did not appear. At the hearing, the court stated that "41([E]) hearing results in a dismissal" and that it would "do it if you requested, with prejudice," but then asked "[w]hy would we have to void anything?" March 28, 2011 Hearing Transcript at 6. Counsel for Shawn stated that the Mortgage "was allegedly transferred," that "[i]t was improperly done," that the Mortgage "itself would have to be voided because there is no proper mortgage at this point," and that "[s]o, basically, it ends up being quiet titled. I would need an Order for quiet title on that one." Id. at 7. The court stated "Ok," and Shawn's counsel further stated that the Bank cannot collect on the Note and that "I guess we are looking to have the promissory note voided" and "then we would need attorney fees or whatever the Court would permit by vertue [sic] of the fair debt collection practices act." Id. at 7-8. Patricia's counsel concurred with the position of Shawn's counsel with the exception that the counterclaim on the Fair Debt Collections Act was brought by Shawn and not by Patricia. At the end of the hearing, the court stated "I will show then [the Bank's] cause is dismissed . . . with prejudice." Id. at 10. The court then stated "[w]e will now leave it up to you all to set further hearings." Id.

The entry in the CCS dated March 28, 2011, stated that the Bank failed to appear, that the Borrowers appeared by counsel, and that "Court now orders this CAUSE DISMISSED WITH PREJUDICE." Appellant's Appendix at 6. The CCS entry for March 28, 2011, includes the notation "Notice: A." Id. According to the CCS, on April

28, 2011, counsel for Shawn tendered a proposed quiet title decree which the court examined and approved.

On that same day, the court issued a Quiet Title Decree providing that the court had jurisdiction over the subject matter of the action and over the parties and Property, that the Bank failed to appear on March 28, 2011, that the court had ordered the Bank's claims dismissed with prejudice, and that according to the court's March 22, 2010 ruling the Bank's amended complaint was untimely, the Bank failed to properly comply with the Fair Debt Collections Practices Act, and the Mortgage was not properly assigned because of the failure to properly abide by statute. The Quiet Title Decree further provided:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the [Bank] and all their husbands, wives, widows, widowers, heirs, devisees, successors, assigns, and any and all other persons claiming any right, title or interest in the within described Real Estate by, through or under them or any person or entity, no longer hold any interest by either mortgage or note in the said Real Estate. Title is hereby quieted in and to [the Borrowers] in fee simple absolute in [and] to the real property located in Howard County.

Id. at 145. A CCS entry dated April 28, 2011, indicates: "[Shawn], by Counsel, . . . tenders Quiet Title Decree which is submitted, examined, and approved. Court now Orders titled [sic] is hereby quieted in and to [the Borrowers] in fee simple absolute in to the real property located in Howard County; pursuant to written Order." Id. at 6. The CCS entry for April 28, 2011, includes the notation "Notice: A." Id.

### Request for Relief from Judgment

On March 23, 2012, the Bank filed a motion for relief from judgment pursuant to Trial Rule 60(B) in which it cited to subsections (1) and (6) and argued that it did not

7

receive the court's February 23, 2011 order scheduling the March 28, 2011 hearing, that reinstatement is warranted, and that the Quiet Title Decree should be vacated pursuant to Trial Rule 60(B)(6) because the relief contained in the decree did not conform to the pleadings. In its memorandum in support of its motion, the Bank argued that the Quiet Title Decree is void and should be vacated pursuant to Trial Rule 60(B)(6) because it does not conform to the pleadings of the case, that even if the decree was not void it still should be vacated pursuant to Trial Rule 60(B)(1) or (8) because there was no dispositive motion before the court seeking relief when it was entered, and that the Bank has a meritorious defense in part because none of the circumstances existed which are listed in Ind. Code § 32-30-3-14 governing quiet title actions. The Bank further argued that the court should vacate the dismissal order pursuant to Trial Rule 41(F) and 60(B)(1) because the Bank did not receive the court's February 23, 2011 order. The Bank attached several documents as exhibits to its memorandum.

In addition, the Bank stated in its memorandum that Litton Loan Servicing, LP ("Litton") was the Bank's servicing agent prior to February 23, 2011, and that Litton had communications with Patricia's counsel. The Bank pointed to an attached exhibit containing an e-mail message dated November 17, 2010, sent by Patricia's counsel to the Bank's counsel stating that he had received telephone calls from a person representing Litton and asking whether he had authorization to talk to that person directly and a response e-mail message dated December 17, 2010, from the Bank's counsel to Patricia's counsel stating that he should feel free to communicate directly with Litton to discuss potential foreclosure prevention agreements. The Bank further stated that, on December

8

30, 2010, its counsel was instructed to refrain from taking action by virtue of the ongoing loss mitigation discussions and that the file of counsel's firm remained on "hold" through the date of the dismissal order. Id. at 153. In support of this statement, the Bank pointed to attached exhibits of affidavits from two attorneys who worked for the firm representing the Bank. The Bank also stated that Litton sent a letter to the Borrowers dated February 15, 2011, advising that they did not qualify for a loan modification agreement but that other loan workout options existed and invited them to contact Litton to discuss the options. The Bank included the letter as an attached exhibit.

Shawn and Patricia filed separate memoranda in opposition to the Bank's motion for relief from judgment. In his memorandum, Shawn stated in part that his counsel never received the February 15, 2011 notice that Litton would not modify the loan; that by notice on August 15, 2011, Litton gave notice that Ocwen Loan Servicing, LLC ("Ocwen") would be servicing the loan; that Ocwen informed Shawn by letter on September 6, 2011 that he owed a debt;[4] that he informed Ocwen in several letters that the Mortgage and Note were invalid; that Ocwen sent Shawn an account statement dated October 17, 2011; and that he and Patricia went through a divorce and that an addendum to the decree addressed the Property and the Note and Mortgage. Shawn also argued that the Bank filed its motion for relief from judgment less than one week before the one-year deadline under Trial Rule 60(B) elapsed, and that the Borrowers would be prejudiced by the reinstatement of the cause which would "wreak havoc on the Court's Property Order"

---

[4] In the September 6, 2011 letter, Ocwen stated that its records reflected that, as of that date, the total current unpaid debt of the Borrowers was $303,975.71, which consisted of $244,167.72 of principal, $47,272.47 of interest, $2,201.14 of late charges, $2,549.50 of collection costs, and $7,784.88 of escrow advances.

9

in their divorce proceedings.  Id. at 179.  Shawn attached a number of documents to the memorandum, including the affidavit of Patricia's counsel, the letters sent to and received from Ocwen, and the CCS related to the Borrower's divorce proceedings.  In her memorandum, Patricia asserted that, although the Bank argued that no motion was before the court seeking to quiet title, such a motion was made at the hearing on March 28, 2011.

The Bank filed a supplemental memorandum in which it argued that, although the present matter related to the Note and Mortgage, the Borrowers "simply did not seek a Quiet Title Decree in their pleadings or in any way reference such a cause of action" and therefore that the Quiet Title Decree is void and should be vacated pursuant to Trial Rule 60(B)(6).  The Bank further argued that Patricia's assertion that an oral motion was presented in open court on March 28, 2011 fails to cure the procedural defects relating to the Quiet Title Decree, that even if one of the parties had submitted a motion for a quiet title decree the Decree entered by the court still does not conform to the pleadings, and that, at best, the Borrowers could have sought leave to file a counterclaim seeking to quiet title pursuant to Trial Rule 13(E) and Ind. Code § 32-30-3-14(c)(2)(C).[5]

On May 17, 2012, the court held a hearing on the Bank's motion for relief from judgment at which the parties presented arguments consistent with the arguments in their memoranda.  The Bank also argued that the court's dismissal of the cause of action with prejudice does not prevent or preclude the Bank from raising subsequent claims under the

---

[5] Ind. Code § 32-30-3-14(c) provides in part: "A person who institutes a proceeding . . . may name an individual described in subsection (b) as a defendant if public records . . . disclose the following circumstances: . . . (2) There exists: . . . (C) a cloud upon . . . the title of the real estate due to a defective or inaccurate legal description of the real estate."

10

Mortgage if there are subsequent and separate alleged defaults. The Bank argued that, even after the court's dismissal under Trial Rule 41(E), the Bank's interest "was far more than simply a cloud on title" and that it constituted a property interest. The Bank argued that the parties could institute an independent action or file a motion to file a belated counterclaim asserting a quiet title action. Shawn also argued that he did not believe that the relief provided by the court was somehow outside the pleadings.

On May 25, 2012, the court denied the Bank's motion for relief from judgment. In its order, the court found in part that any failure to respond by the Bank can be attributed to a failure of the case management system of the Bank's attorneys and that the Bank did not file its motion for relief until nearly a year had passed and "should not benefit from its long slumber." Id. at 10. The Bank now appeals.

## ISSUE AND ARGUMENTS

The issue is whether the trial court erred or abused its discretion in denying the Bank's motion for relief from judgment and dismissing its cause of action. The Bank maintains that the court abused its discretion in dismissing the cause of action for failure to prosecute under Trial Rule 41(E) and erred in denying its motion for relief from the Quiet Title Decree. Specifically, the Bank asserts that the trial court erred in failing to vacate the Quiet Title Decree under Trial Rule 60(B)(6) or (8) and argues that the Quiet Title Decree was entered without motion and without notice to the Bank, is void as it does not conform to the pleadings, is invalid as there is no statutory basis for the decree, and is based on the incorrect argument that the Bank could not reinstitute an action under the Note and Mortgage based upon a new default by the Borrowers. The Bank further

11

argues that it was stripped of a valuable property right without due process of law. The Bank also maintains that it was not given notice of the March 28, 2011 hearing and thus had no opportunity to appear, that the factors this court considers when reviewing a dismissal order here require reinstatement, and that its claim is meritorious.

Patricia argues that the Bank's motion was limited to Trial Rules 60(B)(1) and (6), that reversal of the court's dismissal under Trial Rule 41(E) is not justified under the facts, that the Bank's counsel in its affidavits merely assert that the law firm's business records did not include a saved copy of the notices and that no assertion was made that the notices were not sent or were sent to an incorrect address, and that the Borrowers would be prejudiced by a ruling vacating the court's orders and that reinstatement would wreak havoc on their property order in the divorce proceedings. Patricia further asserts that the Bank's statement that Litton had engaged in communications with her counsel to facilitate loss mitigation is a gross mischaracterization of the facts and that, although her counsel was contacted via voicemail by Litton and received authorization from the Bank to contact Litton directly, no discussions arose as a result of the authorization. Patricia argues that, even if the Bank's counsel was instructed to put the matter on hold in December 2010, the instruction does not excuse inaction before that date nor does it eliminate the need for the Bank's counsel to monitor the court's actions. Patricia also asserts that at the March 28, 2011 hearing, Shawn's counsel requested that the court void the Note and Mortgage and that Patricia's counsel joined in the request. Patricia also states that the Bank failed to show that the Quiet Title Decree did not conform to the pleadings, that it is axiomatic that the validity of a mortgage is at issue in a foreclosure

12

proceeding, that the validity of the Note and Mortgage were challenged by counsel for both of the Borrowers in their answer and affirmative defenses, and that the remedy ordered by the court was sought by the Borrowers.

Shawn argues that the court's dismissal was reasonable, that the Borrowers relied upon the order and are prejudiced by the Bank's motion, that the CCS indicates that the clerk sent notices regarding all matters to the Bank, and that the Bank was not denied due process. Shawn further contends that the Quiet Title Decree was not void under Trial Rule 60(B) as the trial court had jurisdiction to enter such an order, that the decree is voidable rather than void, that the Bank failed to show a meritorious defense, and that the Bank waived its argument under Trial Rule 60(B)(8).

In its reply brief, the Bank maintains that Shawn, in his counterclaim, included affirmative defenses and that neither Shawn nor Patricia in their responsive pleadings even remotely sought a quiet title decree or to comply with the requirements of Ind. Code § 32-30-3-14.

DISCUSSION

The trial court dismissed the Bank's cause of action on its own motion pursuant to Ind. Trial Rule 41(E). Trial Rule 41(E) provides in part:

> [W]hen no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing.

13

Trial Rule 41(F) provides: "For good cause shown and within a reasonable time the court may set aside a dismissal without prejudice. A dismissal with prejudice may be set aside by the court for the grounds and in accordance with the provisions of Rule 60(B)."

Ind. Trial Rule 60(B) provides in part that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons: (1) mistake, surprise, or excusable neglect, . . . (6) the judgment is void . . . ," or "(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4)." A motion shall be filed not more than one year after the judgment was entered for purposes of Trial Rule 60(B)(1) and within a reasonable time for purposes of Trial Rule 60(B)(6) and (8), and a movant filing a motion for reasons under Trial Rule 60(B)(1) and (8) must allege a meritorious claim or defense.

The burden is on the movant to establish grounds for Trial Rule 60(B) relief. In re Paternity of P.S.S., 934 N.E.2d 737, 740 (Ind. 2010). A motion made under Rule 60(B) is addressed to the equitable discretion of the trial court; the grant or denial of the Rule 60(B) motion will be disturbed only when that discretion has been abused. Id. at 740-741 (citation and quotation marks omitted). An abuse of discretion will be found only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and the inferences which may be drawn therefrom. Id. at 741 (citation and quotation marks omitted). A motion for relief from judgment under Rule 60(B) is not a substitute for a direct appeal. Id. at 740. Rule 60(B) motions address only the procedural, equitable grounds justifying relief from the legal finality of a final judgment,

14

not the legal merits of the judgment. Id. "If a judgment is void, whether from faulty process or otherwise, a T.R. 60(B) claimant need not show a meritorious defense or claim." Moore v. Terre Haute First Nat'l Bank, 582 N.E.2d 474, 477 (Ind. Ct. App. 1991), reh'g denied. This court normally employs an abuse of discretion standard in reviewing a trial court's ruling on a motion to set aside a judgment; however, when a motion for relief from judgment is made pursuant to Trial Rule 60(B)(6) alleging that the judgment is void, discretion on the part of the trial court is not employed because either the judgment is void or it is valid. D.L.D. v. L.D., 911 N.E.2d 675, 678 (Ind. Ct. App. 2009), reh'g denied, trans. denied.

With respect to dismissal for failure to prosecute under Trial Rule 41(E), this court has stated that we will reverse such a dismissal only in the event of a clear abuse of discretion. Belcaster v. Miller, 785 N.E.2d 1164, 1167 (Ind. Ct. App. 2003), trans. denied. The purpose of Trial Rule 41(E) is "to ensure that plaintiffs will diligently pursue their claims" and to provide "an enforcement mechanism whereby a defendant, or the court, can force a recalcitrant plaintiff to push his case to resolution." Id. (citing Benton v. Moore, 622 N.E.2d 1002, 1006 (Ind. Ct. App. 1993), reh'g denied). "The burden of moving the litigation is upon the plaintiff, not the court. It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court's power to do so." Id. (citing Benton, 622 N.E.2d at 1006 (quotation omitted)). "Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. [The defendant] should not be left

15

with a lawsuit hanging over his head indefinitely." Id. (citing Hill v. Duckworth, 679 N.E.2d 938, 939-940 (Ind. Ct. App. 1997) (quotation omitted)).

We generally balance several factors when determining whether a trial court abused its discretion in dismissing a case for failure to prosecute. Am. Family Ins. Co. ex rel. Shafer v. Beazer Homes Ind., LLP, 929 N.E.2d 853, 857 (Ind. Ct. App. 2010) (citing Office Env'ts, Inc. v. Lake States Ins. Co., 833 N. E.2d 489, 494 (Ind. Ct. App. 2005); Belcaster, 785 N.E.2d at 1167); see also Westlake v. Benedict, 469 N.E.2d 27 (Ind. Ct. App. 1984), reh'g denied, trans. denied. These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the degree of the plaintiff's personal responsibility; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. Am. Family Ins. Co., 929 N.E.2d at 857 (citing Belcaster, 785 N.E.2d at 1167 (citing Lee v. Friedman, 637 N.E.2d 1318, 1320 (Ind. Ct. App. 1994))). "The weight any particular factor has in a particular case depends on the facts of that case." Id. (citing Belcaster, 785 N. E.2d at 1167 (quoting Lee, 637 N.E.2d at 1320)). "However, a lengthy period of inactivity may be enough to justify dismissal under the circumstances of a particular case, especially if the plaintiff has no excuse for the delay." Id. (citing Belcaster, 785 N.E.2d at 1167 (citing

16

Lee, 637 N.E.2d at 1320)).  Although Indiana does not require trial courts to impose lesser sanctions before applying the ultimate sanctions of default judgment or dismissal, we view dismissals with disfavor, and dismissals are considered extreme remedies that should be granted only under limited circumstances.  Id. (citing Turner v. Franklin Cnty. Four Wheelers Inc., 889 N.E.2d 903, 905 (Ind. Ct. App. 2008)).

### *Dismissal of Cause of Action*

Under the circumstances of this case, we conclude that the trial court abused its discretion when it imposed the harshest possible sanction in dismissing the Bank's lawsuit.  Although we acknowledge and do not condone the failure of the Bank or its counsel to appear at the March 28, 2011 hearing or the delayed filing of the Bank's March 23, 2012 motion for relief from judgment, we nevertheless find that some of the factors set forth in Belcaster outweigh other considerations in this case.

Following the initiation of the lawsuit by the Bank in August 2009, the Bank filed an amended complaint in November 2009, filed an answer to Shawn's counterclaim and a motion for a more definite statement in December 2009, and a response to Shawn's more definite statement and his motion to dismiss in February 2010.  In addition, the Bank appeared at the status hearing on May 5, 2010, and the CCS entry for that date indicated that the court would consider the matter for summary judgment upon the presentation of appropriate pleadings.

We further observe that, although there is some disagreement regarding the nature and extent of any loan modification discussions between the Borrowers and their respective counsel and the Bank and its loan service providers, there is at least an

17

indication based upon the affidavits of the Bank's counsel and an e-mail exchange attached to the Bank's memorandum that in December 2010, several months before the court's March 28 and April 28, 2011 orders, the Bank's counsel indicated to Patricia's counsel on December 17, 2010, that he should feel free to communicate directly with Litton to discuss potential foreclosure prevention agreements and that the Bank instructed its counsel on December 30, 2010 to refrain from proceeding with the cause while the Bank's serving agent was exploring loss mitigation alternatives. Also, the Borrowers received a letter from Litton dated February 15, 2011, which was eight days before the court's February 23, 2011 CCS entry scheduling a hearing under Trial Rule 41(E) and which stated that the Borrowers did not qualify for a loan modification agreement but that Litton offered a number of other loan workout options, including short sales, deeds-in-lieu, and settlements, and stated that the Borrowers could contact its office to discuss the available options or a hotline for further counseling.[6] We decline to find that the absence of activity in the CCS between May 2010 and February 2011, or the delay in the proceedings from December 2010 until the court's February 23, 2011 CCS entry or the March 28, 2011 hearing was unreasonable in light of the nature of the case and the circumstances revealed in the attachments to the parties' various filings and memoranda.

In addition, the original principal loan amount under the Note in July 2002 was $265,000, and according to a letter from Ocwen to the Borrowers the total unpaid debt of the Borrowers as of September 6, 2011, including principal, interest, late charges, collection costs, and escrow advances was $303,975.71. While the Property and the

_____

[6] The Bank does not indicate that its counsel was aware or unaware that Litton sent the February 15, 2011 letter to the Borrowers.

18

Bank's security interest in the Property pursuant to the Mortgage, as well as the parties' obligations pursuant to the Note, were important to the division of the marital estate in the Borrowers' divorce proceedings, we decline to find that the reinstatement of the Bank's claim or the reversal of the Quiet Title Decree would prejudice the Borrowers to an extent that such a reinstatement or reversal would be unreasonable or unjust under the circumstances.

Further, beyond the possible delay at issue here, the record does not reveal that the Bank defied any court orders, and the record reveals that the trial court did not attempt sanctions which were less drastic than dismissal and which would have fulfilled the purposes of the rules and the desire to avoid court congestion. We also observe that dismissal under the circumstances of this case is inconsistent with Indiana's oft-stated policy of having cases decided on their merits whenever possible. See Am. Family Ins. Co., 929 N.E.2d at 858-859 (noting the insurance company did not defy any court orders, that the trial court did not attempt sanctions which were less drastic than dismissal and which would have fulfilled the purposes of the rules and the desire to avoid court congestion, and that dismissal was inconsistent with Indiana's policy of having cases decided on their merits whenever possible) (citing Turner, 889 N.E.2d at 908 (holding that the trial court abused its discretion in dismissing the appellant's complaint where the record revealed no undue delay, bad faith or dilatory motive, and no repeated failure to cure a deficiency); Rueth Dev. Co. v. Muenich, 816 N.E.2d 880, 887 (Ind. Ct. App. 2004) (reversing and holding that the trial court abused its discretion in dismissing the appellant's complaint under Ind. Trial Rule 41(E) after analyzing the factors set forth in

19

Belcaster and determining that the factors favored allowing the appellants to prosecute their claim), trans. denied).

### *The Quiet Title Decree*

With respect to the Quiet Title Decree, the trial court and the Borrowers do not cite to authority for the proposition that the court may void, cancel, or terminate the Note or the Mortgage in dismissing the Bank's claim for failure to prosecute under Trial Rule 41(E). We observe, as noted by the Bank's counsel at the hearing on the motion for relief from judgment, that we have held that a lender is not barred from initiating successive foreclosure claims for subsequent and separate alleged defaults by a borrower under a promissory note where the initial foreclosure action by the lender was dismissed with prejudice pursuant to Trial Rule 41(E), and that subsequent and separate alleged defaults under the note create a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action. See Afolabi v. Atlantic Mortg. & Investment Corp., 849 N.E.2d 1170, 1171-1175 (Ind. Ct. App. 2006). The Borrowers may continue to fail to make payments under the Note, and the Bank's foreclosure action was not adjudicated. Thus, even if the court dismissed the Bank's current action with prejudice under Trial Rule 41(E), the Bank would not be precluded from later filing a claim under the Note and Mortgage for subsequent and separate alleged defaults by the Borrowers. See id. The court erred in finding, in the Quiet Title Decree, that the Bank no longer held any interest in the Property under the Mortgage or, to the extent it ruled on the Note, that the Note was cancelled or unenforceable by the Bank.

20

Further, we observe that, while a trial court has broad discretion in framing its orders so that the relief awarded conforms to the circumstances of each particular case, its discretion is limited to relief based on the issues presented. Mitchell v. Stevenson, 677 N.E.2d 551, 561-562 (Ind. Ct. App. 1997), trans. denied. When a judgment does not conform to the pleadings, it is beyond the jurisdiction of the trial court and, therefore, void. Id. (citing Holmes v. Randolph, 610 N.E.2d 839, 843-844 n.11 (Ind. 1993)). See also Altevogt v. Brand, 963 N.E.2d 1146, 1151 (Ind. Ct. App. 2012) (noting that the trial court did not consider an argument by the plaintiff that a trail was dedicated as a public easement because it was not raised in the pleadings, that the plaintiffs did not directly deny that the claim was not presented in their complaint and instead argued that their third amended complaint sought to quiet title to the trail and that this theory supported their claim of title, that the plaintiffs failed to cite any support for that argument, and that the argument was waived); New Life Comm. Church of God v. Adomatis, 672 N.E.2d 433, 438 (Ind. Ct. App. 1996) (noting that the church chose not to seek the remedy of rescission and that in light of the church's election the court had no authority to order rescission) (citing Holmes, 610 N.E.2d 839 (a judgment which does not conform to the pleadings is beyond the court's jurisdiction and void); Surprise v. Porter, 226 Ind. 375, 80 N.E.2d 107 (1948) (jurisdiction of the court was limited by the pleadings before the court invoking that jurisdiction); Kemp v. Woods, 363 Mo. 427, 434, 251 S.W.2d 684, 688 (1952) ("The powers of a court of equity are limited to the cause of action and issues made by the pleadings . . . . Under a general prayer for relief, an equity court may not

21

grant relief inconsistent with the pleadings and trial theory and repugnant to the specific prayers for relief.")).

While Shawn asserted in his counterclaim and subsequent more detailed statement that the Bank did not properly record the Assignment of Mortgage prior to filing the lawsuit, the pleadings filed by the Borrowers did not make a claim to quiet title under Ind. Code § 32-30-3. At the March 28, 2011 hearing on the court's Trial Rule 41(E) motion, Shawn's counsel stated that the Mortgage "was allegedly transferred," that "[i]t was improperly done," that the Mortgage "itself would have to be voided because there is no proper mortgage at this point," and that "[s]o, basically, it ends up being quiet titled. I would need an Order for quiet title on that one." March 28, 2011 Hearing Transcript at 7. Shawn's counsel also stated "And, one of the (inaudible) permissible is to avoid the promissory note itself, at this point, if it's allegedly been transferred," that "[t]hey can't collect on it anyway . . . [b]ecause of the mortgage finding . . . ," that "I guess we are looking to have the promissory note voided," and that "[w]e have to have the mortgage cleared off by quiet title." Id. at 7-8. The Borrowers did not cite at the hearing and do not cite on appeal to authority for the proposition that the verbal statements or requests by the Borrowers at the March 28, 2011, hearing on whether the cause should be dismissed for failure to prosecute constituted a claim, counterclaim, or pleading to quiet title to the Property.[7] See Fox Dev't, Inc. v. England, 837 N.E.2d 161, 164 n.1 (Ind. Ct. App. 2005) ("Under Indiana Trial Rule 7(A), the term 'pleadings' means a complaint and an answer, a reply to a denominated counterclaim, an answer to a cross-claim, a third-party

_____

[7] As noted by the Bank in its memorandum and at the hearing on its motion for relief, the Borrowers did not seek permission to file an amended counterclaim or other pleadings.

22

complaint, and an answer to a third-party complaint."). The court and the parties do not cite to authority for the proposition that the court may void, cancel, or terminate a party's obligation under a promissory note or a lender's security interest under a mortgage as part of a dismissal for failure to prosecute under Trial Rule 41(E), which would, in effect, amount to an order in favor of the Borrowers on the merits of the validity or enforceability of the loan documents, where those issues were not adjudicated or raised by the Borrowers. As previously mentioned, even if the court dismissed the Bank's current action with prejudice under Trial Rule 41(E), the Bank would not be precluded from later filing a claim under the Note and Mortgage in connection with separate alleged defaults by the Borrowers. We therefore conclude that the court did not have the authority to enter the Quiet Title Decree to the extent that it ruled or ordered that the Bank no longer held any interest in the Property under the Mortgage or that the Note was cancelled, and the court erred or abused its discretion in denying the Bank's motion for relief from judgment on that basis.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's April 28, 2011 Quiet Title Decree and the court's March 28, 2011 entry dismissing the Bank's lawsuit and remand with instructions that the trial court reinstate the Bank's cause of action and for further proceedings consistent with this opinion.[8]

Reversed and remanded.

BAILEY, J., and VAIDIK, J., concur.

---

[8] We need not address any issues related to whether the Borrowers are currently in default under the Note or whether the Mortgage was properly assigned to the Bank. These and related issues may be addressed as necessary by the trial court on remand.